---------------------------------------------------------x

In re:                                          :       Case No. 16-6 0 6 0 7
                                                :
THOUGHTWIRE MEDIA, LLC[1]                        :       Chapter 11
                                                :
                                                :       Judge Russ Kendig
                                                :
            Debtor and                           :
            Debtor-in-Possession.                :
                                                :
(Employer Tax I.D. No. 27-3153003)               :
---------------------------------------------------------x

**DEBTOR'S MOTION FOR ORDER AUTHORIZING (I) THE SALE OF**
**SUBSTANTIALLY ALL OF ITS ASSETS, FREE AND CLEAR OF LIENS, CLAIMS,**
**ENCUMBRANCES, AND INTERESTS AND (II) THE**
**ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES**

The above-captioned debtor and debtor in possession (the "Debtor"), hereby submits this

Motion, pursuant to sections 363 (b) and (e) and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101-

1330 (the "Bankruptcy Code"), and Rules 6004 and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for an Order authorizing the Debtor to sell substantially all

of its assets free and clear of liens, claims, encumbrances, and interests, and to assume and assign

---

[1] The Debtor also used the following business names:  VPS6; Thoughtwire Hosting; Thoughtwire Marketing; Thoughtwire Mobile; and Websites.

certain executory contracts and unexpired leases to the party that submits the highest and best bid, pursuant to the Bidding Procedures (as defined below) and as approved by the Court (the "Purchaser").

In support of this Motion, the Debtor represents as follows:

## I.    BACKGROUND

1.    The Debtor is a digital marketing company providing web-site development, web updates, mobile sites, and internet search marketing, including paid search and search engine optimization, social media marketing, and hosting services to business clients throughout the United States.  The company was established in 2010 by taking over client revenue and service requirements for hosting and internet marketing from Impact Hosting LLC and E Local Café LLC.  Many of those core customers are still part of the Debtor's business.

2.    During 2011, 2013, and 2014, the Debtor had a strategy of growth through asset acquisitions of similar, strategic companies.  The acquisitions were financed through available working capital, secured loans, and various earn-out arrangements.  Each of the acquisitions was intended to increase the customer base and, hopefully, find key employees to manage the business and sell new accounts

3.    In fact most of the acquisitions were difficult to assimilate and the customer fall-off rate was high.  Although the Debtor's management sought to factor those issues into each deal, the effort to separate and maintain clients was more difficult than expected.  At the same time, personnel retention was low.  Many of the employees of the acquired businesses had significant issues with the previous owners and were not interested in continuing after the Debtor acquired the business.  The previous owners, usually the visionaries and sales drivers of their

39988

respective companies, lacked the commitment (even with financial incentives) to provide the necessary support of the Debtor.

4.  The Debtor developed a very good product set and support structure. However, as described above, it failed to integrate former owners as productive sales representatives. Most of them refused or were unable to work in a structured sales environment. They were unable to adjust to selling solutions instead of purely concepts. The Debtor ultimately was unable to find sales talent in our primary market and lacked the resources to develop and maintain remote markets. It has had difficulty, failed, at building a sales force. The financial and organizational turmoil of the acquisitions has proven to not be sustainable.

5.  The company is faced with secured loans that are currently due and the costs of a lawsuit that make it difficult, if not impossible, for the Debtor to continue in business. Ultimately, the Debtor's management determined that it could not continue in business and that it must sell its assets. Contemporaneously with the filing of the Debtor's voluntary petition, the Debtor has filed a motion to sell its assets.

6.  Because of the unsustainability of the Debtor's operations, a Chapter 11 proceeding and sale of assets was determined by the Debtor's management as the best and only chance to save the Debtor's business and restructure its debts.

## II.   TERMS OF ACQUISITION

### A.  Assets to be Sold

7.  The Debtor proposes that the Purchaser will purchase and acquire the Debtor's business and substantially all of the Debtor's assets shown as Exhibit A attached hereto (the "Assets").

39988

### B. **Executory Contracts and Unexpired Leases to be Assumed and Assigned**

8.    The Debtor further proposes that it will assume and assign to the Purchaser certain executory contracts and unexpired leases associated with the Debtor's business. Such list may be modified upon the execution of a purchase agreement between the Debtor and the Purchaser in which case the Debtor will provide notice to any party impacted by such modifications. The list of executory contracts and unexpired leases to be assumed and assigned is attached hereto as Exhibit B.

### C. **Consideration for the Purchase of the Debtor's Assets and the Assignment of Executory Contracts and Unexpired Leases**

9.    The Debtor proposes that the Purchaser will, in consideration for the purchase of the Debtor's assets and assignment of executory contracts and unexpired leases, pay the purchase price via credit bid on the Closing Date.

### D. **Bidding Procedures for the Sale**

10.    Contemporaneously with the filing of this Motion, the Debtor has filed the Debtor's Motion for an Order Approving Bidding Procedures Regarding Debtor's Proposed Sale of Substantially all of its Assets Free and Clear of Liens, Claims, Encumbrances, and Interests and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (the "Bidding Procedures Motion"). Through the Bidding Procedures Motion the Debtor seeks the Court's approval of the procedures to solicit bids for the Assets and to conduct an auction. The Bidding Procedures Motion contemplates an auction to be held at the Debtor's counsel's office one day prior to the hearing on this Motion. The winning bidder's offer will be presented to the Court for approval at the hearing. Directory Concepts, Inc. ("DCI") an affiliate of the Debtor, has made an initial credit bid for the assets for a price of $350,000.

39988

### E.  **Closing**

11.     The closing will occur immediately after the entry of an order approving the sale of the Assets.  The Debtor requests that such order include the protection provided under section 363(m) of the Bankruptcy Code and that the stay imposed by Bankruptcy Rule 6004(g) be waived to facilitate an immediate closing.  If a closing does not occur within ten days after the entry of such order, then the Debtor may proceed to close a sale with the party submitting the second highest bid for the Assets.

### III.     SALE WITH OR WITHOUT THE CONSENT OF THE DEBTOR'S LENDERS

12.     The Debtor is indebted to DCI and Thomas C. Hickox ("Hickox" and together with DCI, the "Lenders") in the principal amounts and priorities as follows plus interest:

|   |   |   |   |
|---|---|---|---|
| a. | DCI | $350,000 | February 1, 2012; |
| b. | DCI | $353,946 | December 31, 2014; |
| c. | DCI | $30,000 | May 20, 2015; |
| d. | DCI | $24,000 | June 24, 2015; and |
| e. | Hickox | $100,000 | January 1, 2014.[2] |

13.     The Lenders hold security interests in substantially all of the Debtor's assets, including without limitation, the Assets to be transferred.  Pursuant to section 363(f)(2) of the Bankruptcy Code, the Debtor can transfer the Assets free and clear of the Lenders' liens if the lenders consent.  The Lenders consent to the sale of the Assets free and clear of the Lender's liens.

14.     Alternatively, the Debtor may sell the Assets without the consent of the Lenders so long another subsection of section 363(f) of the Bankruptcy Code is met.  In this instance, the

---

[2]     Despite the date of the loans from DCI and Hickox, DCI's security agreements provide that its first priority security interest granted on February 1, 2012, extends to all of the Debtor's subsequent borrowings from DCI. 39988

proposed sale may be approved under section 363(f)(1) and (5) so long the Lenders receive the value of their interest in the Debtor's property. That value may be measured by the purchase price. The Bidding Procedures are calculated to draw the highest price for the Assets and thereby fix the value of the Lenders' interests in the Assets. Therefore, through the sale process proposed by the Debtor, the Lenders are receiving the value of their interest in the Debtor's property.

### IV. NECESSITY OF A SECTION 363 SALE OF THE DEBTOR'S ASSETS AND ASSIGNMENT OF THE DEBTOR'S EXECUTORY CONTRACTS AND UNEXPIRED LEASES

15. The Debtor believes that there are a number of reasons why a sale of substantially all of its assets pursuant to sections 363(b) and (f) of the Bankruptcy Code and an assumption and assignment of certain executory contracts and unexpired leases under section 365 of the Bankruptcy Code is necessary, appropriate and justified under applicable law. First, the value of the Debtor's assets is not likely to increase if the Debtor continues to operate in chapter 11, leading the Debtor to conclude that the value of the Debtor's estate will be maximized through a sale of its business as a going concern rather than through a piecemeal liquidation or a delayed sale pursuant to a plan of reorganization. In addition, the Debtor has not been profitable and will continue to lose money while it operates, making it increasingly difficult for the Debtor to continue to operate its business. See, Stephens Industries, Inc. v. McClung, 789 F.2d 386, 391 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of all Chapter 11 debtor's assets under 363(b)(1) when a sound business purpose dictate such action.").

16. Faced with the possibility of a shut down and liquidation of its assets unless a sale is consummated, the Debtor believes that the sale of its assets and assignment of executory contracts and unexpired leases to the Purchaser, as described in this Motion, is the only means

39988

for creating value for its estate. Consequently, the Debtor believes that the relief requested in this Motion is in the best interests of the Debtor, its creditors and its estate.

## V.    NOTICE

17.    A copy of this Motion, as well as Notice of the hearing on this Motion, will be served on all parities specified in Rules 2002(a) and (d) and 6004 of the Bankruptcy Rules, including all parties that have liens or other interests in the Debtor's assets to be sold, all non-debtor parties to executory contacts and unexpired leases to be assumed and assigned, the Office of the United States trustee and all parties who have filed a notice of appearance in this case.

WHEREFORE, the Debtor respectfully requests that the Court enter an order attached hereto as Exhibit C: (a) authorizing the Debtor to sell substantially all of its assets free and clear of liens, encumbrances and interests and assume and assign certain executory contracts and unexpired leases to the party that submits a qualifying competing offer in accordance with the Bidding Procedures to be established by the Court; and (b) granting the Debtor such other and further relief as the Court deems appropriate.

Respectfully submitted,

/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
Selena E. DeGirolamo (0092050)
3930 Fulton Drive NW, Suite 100B
Canton, Ohio 44718
Telephone:  330-305-9700
Facsimile:  330-305-9713
E-mail:  ajdlaw@sbcglobal.net

PROPOSED COUNSEL FOR THE
DEBTOR AND DEBTOR IN POSSESSION

39988

**EXHIBIT A**

39988

## Hosting Server Assets

| | |
|---|---|
| Dell PowerEdge 1950 | $100.00 |
| Dell PowerEdge 1950 | $105.00 |
| Dell PowerEdge 1950 | $100.00 |
| Dell PowerEdge 1950 | $115.00 |
| Dell PowerEdge 1950 | $100.00 |
| Dell PowerEdge 1950 | $95.00 |
| Dell PowerEdge 1950 | $100.00 |
| Dell PowerEdge 1950 | $110.00 |
| Dell PowerEdge 1950 | $95.00 |
| Dell PowerEdge 1950 | $100.00 |
| Dell PowerEdge 1950 | $105.00 |
| Dell PowerEdge 2950 | $275.00 |
| Dell PowerEdge 2950 | $300.00 |
| Dell PowerEdge 2950 | $290.00 |
| Dell PowerEdge 2950 | $225.00 |
| Dell PowerEdge 2950 | $215.00 |
| Dell PowerEdge 2950 | $245.00 |
| Dell PowerEdge 2950 | $295.00 |
| Dell PowerEdge 2950 | $275.00 |
| Dell PowerEdge 2950 | $290.00 |
| Dell PowerEdge 2950 | $215.00 |
| Dell PowerEdge 2950 | $300.00 |
| Dell PowerEdge 2950 | $315.00 |
| Dell PowerEdge 2950 | $300.00 |
| Dell PowerEdge R72 | $5,000.00 |
| Dell PowerEdge R72 | $5,000.00 |
| Dell PowerEdge R72 | $5,000.00 |
| | |
| Total | $19,665.00 |

DomainName
1011BLOG.COM
1011CLIENT.COM
1011COMMERCE.COM
1011CONSULTING.COM
1011DESIGN.COM
1011DEV.COM
1011ECOMMERCE.COM
1011MARKETING.COM
1011MOBILE.COM
1011MOBILE.MOBI
1011SOLUTIONS.COM
1011SOLUTIONS.NET
1011TEAM.COM
1011WEB.COM
1011WEB.MOBI
1011WEB.NET
1011WEBCONSULTING.COM
1011WEBDESIGN.COM
1011WEBDEVELOPMENT.COM
1011WEBSOLUTIONS.COM
1011WEBSOLUTIONS.NET
10ELEVENWEB.COM
AIMONLINECONSULTING.COM
ALLYOUCANEATHOSTING.COM
ALLYOUCANEATHOSTING.INFO
ALLYOUCANEATHOSTING.NET
ALLYOUCANEATHOSTING.ORG
MOBILESEARCHPROS.COM
NATDIRECT.COM
NATIONALDIRECTMEDIA.COM
NATIONALDIRECTMEDIA.INFO
NATIONALDIRECTMEDIA.NET
NATIONALDIRECTMEDIASERVICE.BIZ
NATIONALDIRECTMEDIASERVICE.COM
NATIONALDIRECTMEDIASERVICE.NET
NATIONALDIRECTMEDIASERVICE.US
NYPS.COM
NYPSINC.COM
NYPSINC.NET
QRFOLLOWER.COM
SECRIVAL.COM
SEOSOARINGEAGLE.COM

SOARINGSEOEAGLE.COM
TAZSOL.COM
TAZSOL.NET
TEN11WEB.COM
TENELEVENBLOG.COM
TENELEVENCONSULTING.COM
TENELEVENSOLUTIONS.COM
TENELEVENWEB.COM
TENELEVENWEB.MOBI
TENELEVENWEB.NET
TENELEVENWEBCONSULTING.COM
TENELEVENWEBSOLUTIONS.COM
TENELEVENWEBSOLUTIONS.NET
THEBOOKHOSTING.NET
THEBOOKHOSTING.ORG
THELOCALSEARCH.CO
THELOCALSEARCHCOMPANY.BIZ
THELOCALSEARCHCOMPANY.CO
THELOCALSEARCHCOMPANY.INFO
THELOCALSEARCHCOMPANY.MOBI
THELOCALSEARCHCOMPANY.NET
THELOCALSEARCHCOMPANY.ORG
THELOCALSEARCHCOMPANY.US
THOUGHTWM.COM
TRACKYP.COM
YPTRACKING.COM

accountantlogos.com
advanced-media-productions.com
advancedmediaproductions.com
advmediaproductions.com
ampbeta.com
boston-web-design.net
boston-web-site-design.com
boston-website-design.com
crygentech.com
dgsms.biz
dgsms.co
dgsms.net
dgsms.org
elocalcafe.biz
elocalcafe.com
elocalcafe.net
emailexpressdirect.com
emailexpressdirect.net
fliptomobile.com
fusedhosting.net
gohost.com
gohosting.com
gohosting.net
gohosts.com
gohosts.net
gowebhost.com
gowebhost.net
impacthosting.com
insurancelogo.com
lawyerlogodesign.com
lawyerlogos.com
local-seo-pros.biz
local-seo-pros.co
local-seo-pros.com
local-seo-pros.info
local-seo-pros.mobi
local-seo-pros.net
local-seo-pros.org
local-seo-pros.pro
local-seo-pros.us
local-seo-pros.us.com

logomagic.biz
logomagic.co
logomagic.com
logomagic.info
logomagic.mobi
logomagic.net
logomagic.org
logomagic.pro
logomagic.us
logomagic.us.com
medical-logos.com
mortgagelogos.com
newimpacthosting.com
northstormhosting.net
ppc-pros.biz
ppc-pros.co
ppc-pros.net
ppc-pros.org
ppc-pros.pro
ppc-pros.us.com
programmingwiz.com
qualitylogodesign.com
restaurantlogos.com
sdx.net
searchwiz.com
seo-pros.mobi
seo-pros.org
seo-pros.pro
seo-pros.us.com
shoppingcartwiz.com
signaldataexpress.com
signaldataonline.com
signaldataonline.net
social-media-pros.biz
social-media-pros.co
social-media-pros.info
social-media-pros.mobi
social-media-pros.net
social-media-pros.org
social-media-pros.pro
social-media-pros.us

social-media-pros.us.com
spalogos.com
thebookhosting.com
thought-wire.com
thought-wire.net
thoughtwh.com
thoughtwireclient.com
thoughtwiredesign.com
thoughtwiredesign.net
thoughtwirehost.com
thoughtwirehosting.com
thoughtwireinfosoft.com
thoughtwiremarketing.com
thoughtwiremarketing.info
thoughtwiremarketing.net
thoughtwiremobileandwebsites.com
thoughtwiremobileweb.com
twinfosoft.com
vps6.net
web-design-boston.net
webcast1.com
webcast1.net
webcastone.com
webcastone.net
yellowpagesmobile.org
yellowpagesmobile.pro
yellowpagesonline.pro

# IP Addresses

## WHOIS-RWS

| Network | |
|---|---|
| Net Range | 208.79.140.0 - 208.79.143.255 |
| CIDR | 208.79.140.0/22 |
| Name | NS-NET1 |
| Handle | NET-208-79-140-0-1 |
| Parent | NET208 (NET-208-0-0-0-0) |
| Net Type | Direct Allocation |
| Origin AS | AS13529 |
| Organization | NetStrategies (SVPLL) |
| Registration Date | 2007-06-20 |
| Last Updated | 2012-03-20 |
| Comments | |
| RESTful Link | https://whois.arin.net/rest/net/NET-208-79-140-0-1 |
| See Also | Related POC records. |
| See Also | Related organization's POC records. |
| See Also | Related delegations. |

# WHOIS-RWS

## Network

| | |
|---|---|
| Net Range | 199.192.144.0 - 199.192.147.255 |
| CIDR | 199.192.144.0/22 |
| Name | NS-NET2 |
| Handle | NET-199-192-144-0-1 |
| Parent | NET199 (NET-199-0-0-0-0) |
| Net Type | Direct Allocation |
| Origin AS | AS40715 |
| | AS13529 |
| Organization | NetStrategies (SVPLL) |
| Registration Date | 2011-08-23 |
| Last Updated | 2013-09-24 |
| Comments | https://www.gohost.com/ |
| RESTful Link | https://whois.arin.net/rest/net/NET-199-192-144-0-1 |

| Function | Point of Contact |
|---|---|
| NOC | NOCAD27-ARIN (NOCAD27-ARIN) |
| Abuse | ABUSE3932-ARIN (ABUSE3932-ARIN) |
| Tech | RMO209-ARIN (RMO209-ARIN) |

| | |
|---|---|
| See Also | Related organization's POC records. |
| See Also | Related delegations. |

## Organization

| | |
|---|---|
| Name | NetStrategies |
| Handle | SVPLL |
| Street | Thoughtwire Media LLC |
| | PO BOX 8077 |
| City | Mansfield |
| State/Province | OH |
| Postal Code | 44907 |
| Country | US |
| Registration Date | 2007-03-01 |
| Last Updated | 2015-06-24 |
| Comments | https://www.gohost.com |
| | https://helpdesk.gohost.com |
| RESTful Link | https://whois.arin.net/rest/org/SVPLL |

| Function | Point of Contact |
|----------|------------------|
| Tech | NOCAD27-ARIN (NOCAD27-ARIN) |
| Tech | RMO209-ARIN (RMO209-ARIN) |
| Abuse | ABUSE3932-ARIN (ABUSE3932-ARIN) |
| Tech | COOVE4-ARIN (COOVE4-ARIN) |
| NOC | NOCAD27-ARIN (NOCAD27-ARIN) |
| Admin | RMO209-ARIN (RMO209-ARIN) |

## Point of Contact

| | |
|---|---|
| Note | ARIN has attempted to validate the data for this POC, but has received no response from the POC since 2015-09-24 |
| Name | NOC Admin |
| Handle | NOCAD27-ARIN |
| Company | Thoughtwire Hosting |
| Street | PO BOX 8077 |
| City | Mansfield |
| State/Province | OH |
| Postal Code | 44907 |
| Country | US |
| Registration Date | 2007-03-01 |
| Last Updated | 2014-09-24 |
| Comments | https://www.gohost.com/ |
| Phone | +1-877-848-9581 (Office) |
| | +1-703-642-3800 (Fax) |
| | +1-877-860-3732 (Office) |
| Email | noc.1@thoughtwirehosting.com |
| | sysadmin@gohost.com |
| RESTful Link | https://whois.arin.net/rest/poc/NOCAD27-ARIN |

## Point of Contact

| | |
|---|---|
| Name | Moses , Robert |
| Handle | RMO209-ARIN |
| Company | goHost |
| Street | 301 S. Elm St, Suite 601 |
| City | Greensboro |
| State/Province | NC |
| Postal Code | 27401 |
| Country | US |
| Registration Date | 2009-07-20 |
| Last Updated | 2015-06-05 |

| | |
|---|---|
| Comments | https://www.gohost.com/ |
| Phone | +1-877-848-9581 (Office) |
| | +1-703-642-3800 (Office) |
| Email | rmoses@gohost.com |
| | rmoses@thoughtwm.com |
| RESTful Link | https://whois.arin.net/rest/poc/RMO209-ARIN |

**Point of Contact**

| | |
|---|---|
| Note | ARIN has attempted to validate the data for this POC, but has received no response from the POC since 2014-09-24 |
| Name | Abuse Admin |
| Handle | ABUSE3932-ARIN |
| Company | Thoughtwire Hosting |
| Street | PO BOX 8077 |
| City | Mansfield |
| State/Province | OH |
| Postal Code | 44907 |
| Country | US |
| Registration Date | 2013-09-24 |
| Last Updated | 2013-09-24 |
| Comments | |
| Phone | +1-877-860-3732 (Office) |
| Email | abuse.1@thoughtwirehosting.com |
| RESTful Link | https://whois.arin.net/rest/poc/ABUSE3932-ARIN |

**Point of Contact**

| | |
|---|---|
| Note | ARIN has attempted to validate the data for this POC, but has received no response from the POC since 2015-09-24 |
| Name | Coovert , Nathan |
| Handle | COOVE4-ARIN |
| Company | Thoughtwire Hosting |
| Street | PO BOX 8077 |
| City | Mansfield |
| State/Province | OH |
| Postal Code | 44907 |
| Country | US |
| Registration Date | 2013-09-24 |
| Last Updated | 2014-09-24 |
| Comments | |
| Phone | +1-877-860-3732 (Office) |
| Email | ncoovert@gohost.com |
| | ncoovert@thoughtwm.com |

Phone Numbers DID

### ***PORTED NUMBERS***
4132034114
4132034133
4192935216
4192935217
4192935384
4192994090
4192994206
4192994207
4192994208
4192994209
4192994313
4192994315
4192994317
4192994318
4192994690
4193301291
4193301293
4193301294
4193301295
4193301296
4193301297
4193301298
4194190040
4194190041
4194194946
4194195686
4194195687
4194195688
4194658110
4196102076
4196102101
4197560252
4197562708
4197565234
4197565360
4197565487
4197566525
4197567064
4197567381
4197568295
4199894421

4199894767
4199894772
4199896639
5012050009
5012298859
5012298951
5012298952
5012298953
5012298954
5012298955
5012320867
5012320868
5019751011
5082444002
5082444147
5082444165
5082444398
5082470094
5086475151
5132972287
5613530775
5613917775
5613922202
5614492577
5618990964
5618990967
5618990968
5618990975
5672410377
5672470474
5672473423
6143851088
6148082167
7036423800
7168004963
7168004964
7168004965
7168004966
7168004967
7747688686
7812144724
8172028764
8172028886
8176459414
9492364902
4198845017

4198845031
4198845039
4198845042
4199828113
4199828122
7408489010
7408489015
7408489039
7408489040

## ***TOLL-FREE***

8003672570
8003735646
8004546977

8667002016
8669902202
8778489581
8778603726
8778603732
8885794932
8887555151

**EXHIBIT B**

39988



This MASTER SERVICES AGREEMENT (this "MSA") is entered into by and between Cologix US, Inc. with offices located at 2300 15th Street, Suite 300, Denver, CO 80202 ("Cologix") and **Thoughtwire Media** with offices located at **1669 Lexington Ave, Mansfield, OH 44907** ("Customer") as of the latest dated signature below (the "Effective Date"), and consists of and is subject to the general terms and conditions set forth in this MSA and all Schedules and Service Orders (each as defined below) that are attached to this MSA or are subsequently entered into by the parties hereto (collectively, the "Agreement").

1. **Services.** Cologix provides the services ("Services"), in accordance with the terms and conditions (other than these general terms and conditions), set forth on the schedule(s) referencing this MSA, and attached hereto or executed hereafter (each, a "Schedule"). This Agreement shall apply to all Services provided to Customer by Cologix.

2. **Service Orders.** Cologix will perform the Services specified in any written order between Cologix and Customer that is signed by both parties or, with respect to cross-connects only, any email order that is sent by Customer and confirmed by Cologix via email (each, a "Service Order"). Each Service Order shall identify the Services to be provided by Cologix to Customer, the recurring charges and any non-recurring charges for such Services and the term during which such Services are to be provided. Service Orders under this MSA may be entered into and performed by Cologix and/or any of its Affiliates (as defined below), including an Affiliate authorized to provide Service(s) in a country or jurisdiction other than the country or jurisdiction within which this MSA has been executed. As used herein, "Affiliate" shall mean any entity controlled by, controlling or under common control with the applicable party.

3. **Representations and Warranties.**
   a. Cologix represents and warrants to Customer that Cologix: (i) has the authority to enter into the Agreement and the Agreement constitutes a valid and binding obligation of Cologix that does not violate any other agreement between Cologix and any other person, (ii) will provide the Services in compliance with all applicable laws, rules and regulations; and (iii) Cologix will perform the Services in a workmanlike manner.
   b. Customer represents and warrants to Cologix that Customer: (i) has the authority to enter into the Agreement and the Agreement constitutes a valid and binding obligation of Customer that does not violate any other agreement between Customer and any other person, (ii) will use the Service(s) in compliance with all applicable laws, rules and regulations; and (iii) will comply with Cologix's Policies and Procedures: Facility User Guide, as amended from time to time ("Policies and Procedures"), by publishing it at www.cologix.com and posting at Cologix's facilities. In addition to the foregoing, Customer hereby represents, warrants and covenants to Cologix that if Customer is handling "protected health information" or, if Customer is a "covered entity", in each case, as such term is defined by The Health Insurance Portability and Accountability Act of 1996 (as the same may be amended, "HIPAA"), then, to the extent any data is moving through a Cologix facility, Customer will, at all times during the term of this MSA, ensure that such data is encrypted in both storage and flight as required pursuant to all applicable HIPAA regulations.
   c. If Customer intends to resell or sublicense the Service(s), Customer further covenants that Customer (i) will not do any of the foregoing without Cologix's prior written consent, (ii) Customer will remain liable for the payment of all charges due under each Service Order and all acts or omissions of any sublicensee of Customer shall be attributable to Customer under the Agreement, and (iii) will indemnify, defend and hold Cologix harmless from claims made against Cologix by any third party that Customer resells or sublicenses the Service(s) to.

d. EXCEPT AS EXPRESSLY SET FORTH IN THE AGREEMENT, NO WARRANTIES, EXPRESS OR IMPLIED, ARE MADE BY COLOGIX, AND COLOGIX EXPRESSLY DISCLAIMS ALL OTHER WARRANTIES, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT OR WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE OR TRADE PRACTICE. CUSTOMER IS SOLELY RESPONSIBLE FOR AND COLOGIX EXPRESSLY DISCLAIMS ALL REPRESENTATIONS, WARRANTIES AND LIABILITIES OF ANY KIND RELATING TO CUSTOMER'S SOFTWARE AND HARDWARE, INCLUDING THIRD-PARTY SOFTWARE AND/OR HARDWARE LICENSED BY CUSTOMER.

**4. Billing; Payment of Invoices; Taxes.**
a. Cologix will inform Customer in writing, including, without limitation, email communication, that Customer's ordered Service(s) are available for use by Customer ("Service Commencement Notice"). Upon receipt of such notice, Customer shall have a period of seventy-two (72) hours to confirm that the Service(s) is properly functioning. Unless Customer delivers written notice to Cologix within such seventy-two (72) hour period that the Service(s) is not properly functioning, billing shall commence following the date of the Service Commencement Notice ("Service Commencement Date"), regardless of whether Customer is prepared to accept delivery of the ordered Service(s). In the event that Customer notifies Cologix within the time period stated above that the Service is not functioning properly, then Cologix shall correct any deficiencies in the Service(s) and deliver a new Service Commencement Notice to Customer, after which the process stated above will be repeated. Notwithstanding the foregoing, if Customer has not provided Cologix with its final power configuration with respect to the ordered Service(s) within ten (10) business days of Customer's execution of the applicable Service Order, Customer acknowledges that Cologix shall have the right to deliver the Service Commencement Notice and commence billing for the Service(s) despite the fact that the Service(s) are not available to Customer for Customer's use.
b. Unless otherwise specified in the applicable Service Order, any non-recurring charges will be invoiced by Cologix following the execution of the applicable Service Order. Recurring charges will be billed monthly in advance, except for charges that are dependent upon usage of Services, which are billed in arrears. Billing for partial months will be prorated based on a calendar month.
c. All amounts payable under the Agreement shall be payable in full within thirty (30) days of the date of invoice (the "Grace Period"), in United States dollars, unless otherwise specified in the applicable Service Order. Cologix reserves the right to charge a late fee of 1.5% per month or the maximum rate permitted by law, whichever is less, calculated from the end of the Grace Period. In addition, upon expiration of the Grace Period, Cologix reserves the right to, without limitation, suspend the performance of the Service(s), restrict Customer's access to the Customer space and equipment, refuse to provide any existing Service(s) and/or new Service(s) requested by Customer, and/or exercise any termination rights it has under this MSA.
d. If Customer reasonably disputes an invoice, Customer must pay the undisputed amount before the expiration of the Grace Period and submit written notice of the disputed amount, within thirty (30) days of the date of the disputed invoice (with details of the nature of the dispute and the Service(s) and invoice(s) disputed). If the dispute is resolved against Customer, Customer shall pay the disputed amount plus interest from the date originally due.
e. Cologix reserves the right to change Customer's payment terms, including requiring a deposit or another form of security, at any time when Customer's payment history under any Service Order does not conform to this Section 4 or Customer has an Insolvency Event (as

defined below). As used herein, "Insolvency Event" means making a general assignment for the benefit of a party's creditors, filing a voluntary petition in bankruptcy or any petition or answer seeking, consenting to, or acquiescing in reorganization or similar relief or an involuntary petition in bankruptcy or other insolvency protection is filed against the applicable party. The acceptance and deposit by Cologix of any payment from Customer that contains reference of any type that such payment constitutes "payment in full" shall not constitute an accord and satisfaction or a waiver by Cologix of any right(s) it possesses, in law or equity, to collect payment in full from Customer for any and all Services provided to Customer under the Agreement.

f. All charges for Service(s) are exclusive of applicable taxes and fees. Except for taxes based on Cologix's net income, Customer shall be responsible for all taxes and fees that arise in any jurisdiction, however designated, imposed on, incident to, or based upon the provision, sale or use of the Service(s).

### 5. Term, Termination; Expiration.

a. Unless otherwise specified in a Service Order, all Service Orders shall automatically renew for successive terms equal to twelve (12) months in length, except for Service Orders that have month to month terms which automatically renew for successive one-month terms (each a "Renewal Term"), unless either party provides written notice of non-renewal to the other party at least thirty (30) days prior to the end of the then-current term ("Non-Renewal Notice Period"). Cologix may increase any charges payable by Customer to Cologix during any Renewal Term by providing written notice of the new applicable charges at anytime prior to the end of the then-current term; provided, however, if Cologix delivers such notice during the Non-Renewal Notice Period, Customer shall have thirty (30) days from the date of Cologix's notice to give notice of non-renewal.

b. Either party may terminate the Agreement or any Service Order, (i) if the other party fails to perform or breaches any material term or condition of the Agreement (other than as provided below) and does not cure such breach within thirty (30) days (ten (10) days for late payment of fees) following the receipt of a written notice from the non-breaching party specifying the nature of the breach in reasonable detail and stating such party's intention to terminate the Agreement and/or Service Order, as applicable; or (ii) the other party has had an Insolvency Event. Other than as expressly provided in the Agreement, neither party shall have the right to terminate the Agreement or any Service Order during a term. If Customer terminates the Agreement or any Service Order prior to the end of the applicable term in violation of the terms hereof, then Customer shall owe to Cologix, as liquidated damages, an amount equal to one hundred percent (100%) of the monthly recurring charges due under the terminated Service Order(s) for the remainder of the term of such Service Order(s). The failure to pay amounts owed under a Service Order when due shall be considered a material breach of the Agreement. Notwithstanding the foregoing, Customer's sole remedies for Service outages, failures or defects are contained in any service level agreement(s) ("SLAs") included in any Schedule, if any.

c. Within five (5) business days of expiration, or the earlier termination, of the Agreement or any Service Order, Customer shall remove all of its equipment and other personal property (which shall include any hardware or software licensed by Customer from a third party) from Cologix's facility(ies). If Customer fails to remove its equipment or other personal property, Cologix may, without prior notice to Customer, disconnect, remove and dispose of Customer's equipment or other personal property at Customer's expense.

d. In the event of any change in applicable law, regulation, decision, rule or order that materially increases the costs or other terms of delivery of the Service(s), Cologix and Customer will negotiate, in good faith, regarding how to address the change and, in the event that the parties are unable to reach agreement within thirty (30) days after Cologix's delivery of written notice requesting negotiation, then (i) Cologix may modify the Agreement upon written notice, to the extent necessary to address such change, or terminate the Agreement, and (ii) if Cologix elects to modify the Agreement, Customer may terminate the affected Service(s) by delivering written notice of termination to Cologix no later than thirty (30) days after its receipt of Cologix's notice.

### 6. Limitation of Liability.
Except where a party has an indemnification obligation to the other party or where such party has acted with gross negligence or willful misconduct, in no event will either party be liable to the other party for any indirect, consequential, incidental, special or punitive damages, including, without limitation, loss of use, interruption of business, loss of data or loss of profits, arising out of or in any way connected with the Agreement or the Services, even if the relevant party has been advised of the possibility of such damages.

### 7. Indemnification.
Each party agrees to indemnify the other party, its Affiliates, and their respective officers, directors, members, shareholders, employees, agents, assigns and successors, and shall hold them harmless against any losses, liabilities, damages, costs or expenses (including reasonable attorneys' fees) resulting from a third party claim, arising out of or alleged to have arisen out of, (a) such party's breach of its obligations, representations or warranties under the Agreement or (b) bodily injury, death or property damage caused by such party. The indemnified party agrees to give prompt written notice to the indemnifying party of any such claim; provided, that any delay in furnishing such notice shall not discharge the indemnifying party from its indemnification obligation hereunder, except to the extent such delay results in actual prejudice to the indemnifying party. The indemnifying party shall undertake and conduct the defense of any claim so brought. The indemnifying party shall keep the indemnified party advised of the progress of any such claim and the indemnified party shall have the right to participate in such claim at its own expense. If the indemnifying party shall fail to take timely action to defend any such claim then the indemnified party may defend such claim at the indemnifying party's expense. The indemnifying party shall not have the right to settle, compromise or otherwise enter into any agreement regarding the disposition of any claim without the indemnified party's prior written consent, which may not be unreasonably withheld, except for a claim solely for monetary damages.

### 8. Insurance.
Customer agrees to keep in full force and effect during the term of the Agreement: (a) comprehensive general liability insurance, including contractual liability insurance, in an amount not less than One Million Dollars $1,000,000 per occurrence, providing for the investigation, defense and satisfaction (by settlement or otherwise) of any claim under the Agreement, (b) "Special Causes of Loss" Property insurance covering all of Customer's personal property located at any of Cologix's facilities and (c) workers' compensation insurance in an amount not less than that required by applicable law and Employer's Liability with limits of at least Five Hundred Thousand Dollars ($500,000). Customer acknowledges that (x) it retains the risk of loss for, or damage to, its equipment and other personal property located at any of Cologix's facilities and (y) Cologix's insurance policies do not provide coverage for Customer's equipment or other personal property. Customer's general liability policy shall indicate that insurer provides the primary, non-contributory insurance for any claims under the Agreement and shall include a provision denying insurer subrogation rights against Cologix or the Cologix indemnitees. Customer shall cause the insurance company issuing such policy to issue a certificate to Cologix confirming that such policy is in full force and effect and provides coverage to Cologix and the Cologix indemnitees as additional insureds and confirming that before any cancellation or material modification, the insurance company will provide Cologix with thirty (30) days prior written notice. Customer shall require any contractor, customer or other third party entering a Cologix facility on

2

Customer's behalf to procure and maintain the same types, amounts and coverage extensions as required of Customer.

**9. Confidential Information.** "Confidential Information" means Cologix's pricing and terms of Service. Customer agrees that it (i) will not disclose the Confidential Information to any third party except as required by law and (ii) Customer will take reasonable precautions to protect the confidentiality of such Confidential Information. In the event that Customer is required by law to make any disclosure of any Confidential Information, Customer must first give written notice of such requirement to Cologix, and must permit Cologix to intervene in any relevant proceedings to protect its interests in the Confidential Information. Customer acknowledges and agrees that damages at law would be an insufficient remedy to Cologix in the event that any of the covenants contained in this Section are violated. Accordingly, in addition to any other remedies or rights that may be available to Cologix, Cologix shall also be entitled, upon application to a court of competent jurisdiction, to obtain injunctive relief to enforce the provisions of this Section, and in any proceeding in which Cologix attempts to specifically enforce any or all such covenants, Customer hereby waives the defense that an adequate remedy at law exists.

**10. Publicity.** During the term of the Agreement, Customer grants Cologix the right to use Customer's logo and name on Cologix's website and promotional materials. Customer shall have the right to require Cologix to terminate any such uses at any time by written notice.

**11. Relationship of Parties.** Nothing in the Agreement will be construed to imply a joint venture, partnership or agency relationship between the parties, and Cologix will be considered an independent contractor when performing Service(s) under the Agreement.

**12. Assignment.** Customer may not assign the Agreement without Cologix's prior written consent.

**13. No Third Party Beneficiaries.** No provisions of the Agreement are intended to, or shall be construed to, confer upon any person, other than the parties hereto, any rights, remedies or other benefits under or by reason of the Agreement.

**14. Notices.** All notices required or permitted hereunder must be given in writing and, except for routine notices that the parties agree to send and receive electronically, shall be considered properly given if hand-delivered, mailed first class mail (postage prepaid and return receipt requested) or sent by express overnight courier at the address specified on the first page of this MSA or at such other address as a party may specify in writing pursuant to this Section. All notices shall be deemed given when received.

**15. Governing Law; Consent To Jurisdiction; Waiver of Jury Trial.** The Agreement shall be deemed to be a contract made under, and shall be construed in accordance with, the laws of the State of Colorado (without reference to the conflicts of laws provisions therein and the federal laws of the United States). In addition, each party consents to the exclusive jurisdiction of any state or federal court empowered to enforce the Agreement located in Denver County, Colorado, and waives any objection thereto on the basis of personal jurisdiction or venue. Each party waives their respective rights to trial by jury for any claim whatsoever in any way connected with the Agreement or the relationship between the parties.

**16. Force Majeure.** Except with respect to any payment obligations, neither party will be liable for any failure or delay in its performance under the Agreement due to causes beyond its reasonable control. In the event that Cologix is not able to deliver any Service(s) as a result of a force majeure event, Customer shall not be obligated to pay Cologix for the affected Service(s) for so long as Cologix is unable to deliver the affected Service(s).

**17. Waiver.** No waiver will be effective unless documented in a writing signed by an authorized representative of the party against which enforcement of the waiver is sought. The failure of either party to insist upon strict performance of any of the terms or provisions of the Agreement, or the exercise of any option, right or remedy contained herein, shall not be construed as a waiver of any future application of such term, provision, option, right or remedy, and such term, provision, option, right or remedy shall continue and remain in full force and effect.

**18. Survival.** Any term or provision of the Agreement of an ongoing nature and/or which, by their nature and context, should reasonably be expected to survive the expiration or earlier termination of the Agreement, shall so survive such expiration or termination thereof.

**19. Prevailing Party.** In the event of a dispute arising from or related to the Agreement, the substantially prevailing party shall be entitled to recovery of all reasonable costs incurred, including, without limitation, court costs, attorneys' fees and other related costs and expenses.

**20. Counterparts; Photographic Copies.** This MSA and any Schedule or Service Order may be executed in counterparts which, when taken together, shall constitute one and the same document. In addition, a facsimile or photographic copy of a party's signature or this Agreement shall be deemed an original thereof.

**21.** **Severability.** If any term or provision of the Agreement shall be declared by a court of competent jurisdiction to be invalid, unenforceable or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that the Agreement shall otherwise remain in full force and effect and enforceable. If the surviving portions of the Agreement fail to retain the essential understanding of the parties, the Agreement shall be terminated by the mutual consent of the parties.

**22. Headings.** Heading are for ease of reference only and shall not have any effect upon the construction of the Agreement.

**23. Construction.** The parties agree that each party has reviewed and revised the Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of the Agreement.

**24. Entire Agreement; Modification; Order of Precedence.** The Agreement constitutes the entire agreement between the parties relating to its subject matter and the Agreement supersedes all prior agreements and understandings between the parties, oral or written, with respect to its subject matter and may not be changed unless mutually agreed upon in writing by both parties. In case of a conflict between any of the terms and conditions in this MSA and any other terms and conditions in any Schedule or Service Order, the order of precedence shall be: any Schedule, any Service Order, and this MSA. For the avoidance of doubt, any purchase order sent to Cologix by Customer (for Customer's administrative purposes or otherwise) shall not be binding.

3

**IN WITNESS WHEREOF,** the parties have executed this MSA by their duly authorized representatives.

**COLOGIX:**

_____
(Signature)

_____
(Name)

_____
(Title)

_____
(Date)

**CUSTOMER:**

_____
(Signature)

_____
(Name)

_____
(Title)

_____
(Date)

4

**EXHIBIT C**

39988

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION, CANTON**

---------------------------------------------------------x
In re:                                             :     Case No. 16-6 0607
                                                   :
THOUGHTWIRE MEDIA, LLC[1]                           :     Chapter 11
                                                   :
                                                   :     Judge Russ Kendig
                                                   :
            Debtor and                             :
            Debtor-in-Possession.                  :
                                                   :
(Employer Tax I.D. No. 27-3153003)                 :
---------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 363(b), (f), (m), AND 365, AND**
**FED. R. BANKR. P. 6004, 6006, AND 9014 (I) AUTHORIZING THE DEBTOR TO SELL**
**SUBSTANTIALLY ALL OF ITS ASSETS FREE AND CLEAR OF LIENS, CLAIMS,**
**ENCUMBRANCES AND INTERESTS AND (II) TO ASSUME AND ASSIGN**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO**

        Before the Court is the Motion (the "Sale Motion"), Docket No. _____, filed by the

above-captioned debtor and debtor in possession (the "Debtor") on March 25, 2016, requesting

(among other things) the entry of an order pursuant to sections 363(b), (f), (m), and 365 of title

---
1  The Debtor also used the following business names:  VPS6; Thoughtwire Hosting; Thoughtwire Marketing;
Thoughtwire Mobile; and Websites.

11, United States Code (the "Bankruptcy Code"), and Rules 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the sale (the "Sale") of the assets used in the Debtor's operations free and clear of all liens, claims, encumbrances, and interests of whatever type or nature (collectively, the "Interests"), (ii) authorizing the Debtor to assume and assign to the Purchaser, as defined herein, certain executory contracts and unexpired leases associated with the Debtor's business and (iii) granting related relief; this Court having set April __, 2016, as the date for the sale of the Assets and the Assigned Contracts and the Debtor having conducted the sale on April __, 2016; the Debtor having determined that the Purchaser's bid is the best and highest bid for the Assets; the Court having reviewed and considered the Sale Motion and it appearing that the relief requested in the Sale Motion is in the best interest of the Debtor, its estate, creditors, and other parties in interest in this case; after due deliberation thereon; "Purchase Agreement" shall mean the agreement or agreements between the Debtor as seller, on the one hand, and _____ ("Purchaser") as buyer; "Assets" shall mean the assets to be sold to the Purchaser pursuant to the Purchase Agreement, more fully described on Exhibit A attached hereto, and executory contracts and unexpired leases to be assumed and assigned to the Purchaser shown on Exhibit B hereto (the "Assigned Contracts"); and good cause appearing therefore, it is hereby FOUND AND DETERMINED AS FOLLOWS:

A. The Court has jurisdiction over the Sale Motion and the transactions contemplated by the Sale Motion pursuant to 28 U.S.C. § 1334 and reference from the District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case and the Sale Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

124501

16-60607-rk    Doc 12    FILED 03/25/16    ENTERED 03/25/16 13:42:48    Page 30 of 40

B.  The statutory predicates for the relief requested in the Sale Motion are sections 363(b), (f), (m), and 365 of the Bankruptcy Code and Rules 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure.

C.  As evidenced by the affidavit of service, Docket Nos. _____ through _____ previously filed with the Court, and based on the representations of counsel at the hearing held on April __, 2016, on the Sale Motion (the "Hearing") and upon further notice under Rule 6006 of the Federal Rules of Bankruptcy Procedure provided on _____ ___, 2016, to any non-Debtor party to an executory contract that the Debtor proposes to assume and assign to the Purchaser, together with proposed cure amounts to be paid by the Purchaser; (i) proper, timely, adequate, and sufficient notice of the Sale Motion and the sale has been provided in accordance with sections 363 and 365 of the Bankruptcy Code and Rules 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure; (ii) such notice was reasonable, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Sale Motion, is required.

D.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) counsel for the Purchaser; (ii) counsel for the Debtor's prepetition secured lender(s); (iii) the Office of the United States Trustee; (iv) all entities known to have asserted any lien, claim, encumbrance, alleged interest in or with respect to the Assets; (v) all non-Debtor parties to the Assigned Contracts upon notice provided under paragraph C hereof; and (vi) all other entities that have filed requests for notices pursuant to Bankruptcy Rule 2002.

E.  The Debtor has demonstrated sound business justifications for the Sale and the related transactions pursuant to section 363(b) of the Bankruptcy Code.

F.  The Sale was negotiated, proposed, and agreed to by the Debtor and the Purchaser as parties thereto without collusion, in good faith, and from arm's length bargaining positions.

124501

16-60607-rk    Doc 12    FILED 03/25/16    ENTERED 03/25/16 13:42:48    Page 31 of 40

Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the Sale to be avoided under section 363(n) of the Bankruptcy Code. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

G. The consideration provided by the Purchaser for the Assets and the Assigned Contracts (i) is fair and reasonable; (ii) is the highest and best offer for the Assets and the Assigned Contracts; and (iii) will provide a greater recovery for the Debtor's creditors and other interested parties than would be provided by any other available alternative.

H. The sale of the Assets to the Purchaser under the terms of this Order will be a legal, valid, and effective transfer, and will vest in the Purchaser all right, title, and interest of the Debtor to the Assets free and clear of all Interests including, but not limited to, those (i) that purport to give to any party a right or option to consummate in the future, any sale, contingent sale, title retention agreement or lease relating to the Assets (or a right or option to terminate the Debtor's or the Purchaser' rights therein), or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the date (the "Closing Date") of the consummation of the Sale (the "Closing").

I. The Debtor may sell the Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those holders of Interests and non-Debtor parties who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests fall also within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they claim or may claim an Interest.

4

124501

J.   Approval and consummation of the Sale at this time is in the best interest of the Debtor, its creditors, its estate, and other parties in interest.

K.   The Purchaser would not consummate the transactions contemplated by the Sale, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Assets were not free and clear of all Interests of any kind or nature whatsoever, or if each Purchaser would, or in the future could, be liable for any such Interests and if the transfer could not be made under section 363 of the Bankruptcy Code.

NOW, THEREFORE, BASED UPON THE FOREGOING FINDINGS OF FACT, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, EFFECTIVE IMMEDIATELY, THAT:

1.   The Sale Motion shall be, and hereby is granted, as further described herein.

2.   Defined terms not otherwise defined in this Order shall have the meanings given them in the Sale Motion.

3.   Any party that received notice of the Sale Motion and did not object shall be deemed to consent to the relief requested therein and ordered hereby.

4.   The Sale as presented to the Court at the hearing on this matter, and all of the terms and conditions thereof, are hereby approved as if fully stated herein, and the Debtor is hereby authorized to execute the Purchase Agreement on such terms as contained therein. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, and in accordance with the terms thereof, as may be necessary to give effect to the intent of the parties as represented to the Court and consummate the transactions contemplated by such agreements, documents or instruments without further order of the Court, provided that any such modification, amendment or supplement is not materially different from the terms presented to the Court and does not have a material adverse effect on the Debtor's estate as defined herein, in form and substance.

124501

5.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to consummate the Sale, pursuant to and in accordance with the terms and conditions of the Purchase Agreement and to take all actions and execute all documents as may be necessary to consummate the Sale or effect the transactions referenced in or otherwise contemplated by the Purchase Agreement.

6.  The Debtor is authorized and directed to execute and deliver, and is empowered to perform under, consummate, and implement, the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, and conveying to the Purchaser or reducing to possession the Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

7.  In connection with the assumption and assignment of the Assigned Contracts, the Purchaser shall promptly pay or agree to the payment terms for all Cure Amounts.  Any non-Debtor party to an Assigned Contract that disagrees with or disputes the Cure Amount must file an objection to the Cure Amount no later than _____ __, 2016.  In the event that no objection to the Cure Amount is filed, then the non-debtor party to the Assigned Contract shall be deemed to have waived any objection thereto, and the Cure Amount shall be deemed binding on the non-Debtor party and the Purchaser.  The Debtor shall not be required to take any other action or to make any other payment with respect to any defaults under the Assigned Contracts.  All non-Debtor parties to Assigned Contracts are hereby enjoined and forever barred from asserting any claim or default, including termination of any Assigned Contract by reason of any claim or default which may exist under such Assigned Contracts, except as may be specified in the Purchase Agreement or as otherwise set forth in this Order.

124501

8.   Subject to the provisions of paragraph 7 of this Order, the Debtor is authorized and directed to assume and assign the Assigned Contracts to the Purchaser, free and clear of all Interests, and the assignment of the Assigned Contracts is valid under section 365 of the Bankruptcy Code and the Assigned Contracts will be deemed to have been assumed by the Debtor and assigned to the Purchaser effective as of the Closing Date.   Pursuant to section 365(k) of the Bankruptcy Code, the assignment by the Debtor of the Assigned Contracts relieves the Debtor and its estate from any liability from any breach of the Assigned Contracts after the Closing Date.

9.   The purchase price to be paid by the Purchaser for the sale and transfer of the Assets under the terms of the Sale and the Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.   The sale of the Assets and other transactions contemplated by the Purchase Agreement may not be avoided under sections 363(k) or (n) of the Bankruptcy Code.

10. The transactions contemplated by the Sale and the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of this Order shall not affect the validity of the Sale of Assets to the Purchaser, unless such Sale and this Order are duly stayed pending appeal.   The Purchaser is a purchaser in good faith of the Assets for all purposes.

11. All of the Debtor's interest in the Assets shall be, as of the Closing Date, transferred to and vested in the Purchaser.   Upon the Closing Date, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of any assets acquired by the Purchaser under the Purchase Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the assets

124501

acquired by the Purchaser under the Purchase Agreement. In accordance with the Sale and the Purchase Agreement, from and after the Closing Date, the Purchaser shall be granted immediate and unfettered access to the Assets.

12. Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement and this Order, pursuant to sections 105(a), 363(f), and 365 of the Bankruptcy Code, the Assets shall be transferred to the Purchaser free and clear of all Interests of any kind or nature whatsoever, (including but not limited to any liens, claims, rights or encumbrances of any governmental authority or entity, and any other claims, known or unknown, contingent or non-contingent for any environmental liability or products liability), with all such Interests to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they now have as against such assets, subject to any claims and defenses that the Debtor and other parties having Interests in the Assets may possess with respect thereto.

13. Except as expressly permitted by applicable law or otherwise specifically provided for in the Purchase Agreement, or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and other regulatory authorities, lenders, trade and other creditors holding Interests of any kind or nature whatsoever against or in the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the Closing Date, are hereby forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns (to the extent allowed by law), its property, its officers, and any directors and shareholders of the Purchaser, such persons' or entities' Interests. All holders or beneficiaries of the Interests are hereby directed to cooperate with the Purchaser in delivering such documents reasonably requested by the Purchaser, which

124501

may be necessary to evidence and effectuate the extinguishment of any Interests from or against the Assets.

14. If any person or entity that has filed financing statements, assignments, security agreements, lis pendens, or other documents or agreements evidencing Interests in any of the Assets shall not have delivered to the Debtor prior to the Closing Date in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and releases of all Interests which the person or entity has with respect to the Seller or otherwise, then (a) the Debtor is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets; and (b) the Purchaser are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all interests in the Assets of any kind or nature whatsoever.

15. This Court retains jurisdiction to endorse and implement the terms and provisions of the Sale and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser; (b) compel delivery of the Purchase Price or performance of other obligations owed to the Debtor; (c) resolve any disputes arising under or related to the Sale or the Purchase Agreement, except as otherwise provided therein; and (d) interpret, implement, and enforce the provisions of this Order.

16. To the extent not inconsistent with or prohibited by applicable law, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Assets other than those expressly assumed in the Sale and under the Purchase Agreement or arising under the Assigned Contracts from and after the Closing Date.

124501

Without limiting the generality of the foregoing exclusion, the Purchaser is assuming no obligation for, and (to the extent consistent with applicable law) shall have no responsibility with respect to, the Debtor's accounts payable or liabilities under environmental laws. The Purchaser shall be under no obligation to hire any of the Debtor's employees and shall not assume any obligations to or with respect to such employees, including, without limitation, any obligations for employment compensation, benefits or severance or any obligations under or with respect to any ERISA plan, any multiemployer plan or otherwise, including, without limitation, obligations arising under COBRA, any obligation to provide compensation or benefits pursuant to any employment contract, and any obligations under or with respect to any collective bargaining agreements. Except for such obligations expressly assumed by the Purchaser, all persons are hereby enjoined from asserting or prosecuting any claim against the Purchaser to recover on any claim such person had, has or may have against the Debtor, its estate or the Assets.

17. The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser, and their respective affiliates, successors, and assigns and any affected third parties (including, but not limited to, all non-Debtor parties asserting interests in the Assets), notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, upon which trustee such terms and provisions likewise shall be binding.

18. The failure specifically to include any particular provisions of the Sale or the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Sale and the Purchase Agreement be authorized and approved in their entirety as if fully stated herein.

19. Any notices of appeal of this Order must be in writing and must be filed with the Court and served on (a) Anthony J. DeGirolamo, 3930 Fulton Drive NW, Suite 100B, Canton.

124501

Ohio 44718; and (b) Jay Wagner, Esq., Wagner Law Firm, P.O. Box 576, Galion, Ohio 44833.

This Order shall be effective immediately upon its entry. The stays provided under Bankruptcy

Rules 6004(g) and 6006(d) are both hereby waived and no stay shall apply to the Sale. This

Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rule 7062 or

otherwise. This Order is, and shall be entered by the Clerk in the records of the Debtor's case as,

a "final" order pursuant to Fed. R. Civ. P. 54 and 58 and Bankruptcy Rules 5003, 7054, and

9021.

###

**PREPARED BY:**

Anthony J. DeGirolamo (0059265)
3930 Fulton Drive NW, Suite 100B
Canton, Ohio 44718
Telephone: 330-305-9700
Facsimile: 330-305-9713
E-mail: ajdlaw@sbcglobal.net

COUNSEL FOR THE DEBTOR AND
DEBTOR IN POSSESSION

124501

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Order was served via regular U.S. Mail, postage prepaid, upon those listed below, this _____ day of _____, 2016.

_____
Deputy Clerk

124501