## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION, CANTON

---------------------------------------------------------x
In re:                    :   Case No. 16-60607

                         :

THOUGHTWIRE MEDIA, LLC[1]   :   Chapter 11

                         :

                         :   Judge Russ Kendig

                         :

         Debtor and          :

         Debtor-in-Possession.   :

                         :

(Employer Tax I.D. No. 27-3153003)   :
---------------------------------------------------------x

### MEMORANDUM IN SUPPORT OF DEBTOR'S MOTION FOR ORDER AUTHORIZING (I) THE SALE OF SUBSTANTIALLY ALL OF ITS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS <u>AND UNEXPIRED LEASES</u>

Now comes Thoughtwire Media LLC, the above-captioned debtor and debtor in possession in this chapter 11 case (the "Debtor"), and files this Memorandum in Support of its Motion For Order Authorizing (i) Sale of Substantially All of Its Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; and (ii) and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (the "Sale Motion").

---

[1] The Debtor also used the following business names: VPS6; Thoughtwire Hosting; Thoughtwire Marketing; Thoughtwire Mobile; and Websites.

# I.    PRELIMINARY STATEMENT

1.      On March 25, 2016 (the "Petition Date"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtor is a digital marketing company providing web-site development, web updates, mobile sites, and internet search marketing, including paid search and search engine optimization, social media marketing, and hosting services to business clients throughout the United States.  The company was established in 2010 by taking over client revenue and service requirements for hosting and internet marketing from Impact Hosting LLC and E Local Café LLC.   Many of those core customers are still part of the Debtor's business.

3.      During 2011, 2013, and 2014, the Debtor had a strategy of growth through asset acquisitions of similar, strategic companies.  The acquisitions were financed through available working capital, secured loans, and various earn-out arrangements.   Each of the acquisitions was intended to increase the customer base and, hopefully, find key employees to manage the business and sell new accounts

4.      In fact most of the acquisitions were difficult to assimilate and the customer fall-off rate was high.  Although the Debtor's management sought to factor those issues into each deal, the effort to separate and maintain clients was more difficult than expected.  At the same time, personnel retention was low.  Many of the employees of the acquired businesses had significant issues with the previous owners and were not interested in continuing after the Debtor acquired the business.  The previous owners, usually the visionaries and sales drivers of their

39977

respective companies, lacked the commitment (even with financial incentives) to provide the necessary support of the Debtor.

5.      The Debtor developed a very good product set and support structure.  However, as described above, it failed to integrate former owners as productive sales representatives.  Most of them refused or were unable to work in a structured sales environment.  They were unable to adjust to selling solutions instead of purely concepts.  The Debtor ultimately was unable to find sales talent in our primary market and lacked the resources to develop and maintain remote markets.  It has had difficulty, failed, at building a sales force.  The financial and organizational turmoil of the acquisitions has proven to not be sustainable.

6.      The company is faced with secured loans that are currently due and the costs of a lawsuit that make it difficult, if not impossible, for the Debtor to continue in business.  Ultimately, the Debtor's management determined that it could not continue in business and that it must sell its assets.  Contemporaneously with the filing of the Debtor's voluntary petition, the Debtor has filed a motion to sell its assets.

7.      Because of the unsustainability of the Debtor's operations, a Chapter 11 proceeding and sale of assets was determined by the Debtor's management as the best and only chance to save the Debtor's business and restructure its debts.

## II.      DISCUSSION

8.      In accordance with section 363(f) of the Bankruptcy Code, the Debtor may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" only if one of the following conditions is satisfied:

       a.      applicable nonbankruptcy law permits sale of such property free and clear of such interest;

-3-

39977

b.      such entity consents;

c.      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d.      such interest is in bona fide dispute; or

e.      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

9.      The Debtor has requested authority to sell substantially all of its assets according to the terms set forth in the Sale Motion, and the purchase agreement to be negotiated thereunder, with the Purchaser, or on such higher and better terms as may be approved by this Court, as more fully set forth in the Sale Motion, and, pursuant to section 363(b)(1) of the Bankruptcy Code. The sale of property of the estate, other than in the ordinary course of business, is authorized "when a sound business purpose dictates such action." See, Stephens Industries, Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986). The Sixth Circuit in Stephens Industries expressly adopted the reasoning in In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983) as the basis for allowing sales of substantially all of a debtor's assets outside of a plan and disclosure statement. See, Id., see also, In re Plabell Rubber Products, Inc., 149 B.R. 475, 478 (Bankr. N.D. Ohio 1992)[2]; In re Weatherly Frozen Food Group, Inc., 149 B.R. 480 (Bankr. N.D. Ohio 1992). The Lionel court canvassed the decisions concerning sales of debtor's assets in chapter 11 cases and expressly rejected the proposition expressed in earlier cases that an emergency must exist before a sale may be approved. Id. at 1068-70. In Lionel, however, the court found that the creditors'

---

2    The Plabell Rubber court denied the debtor's request for a number of reasons not present here. For example, that debtor's case had been pending for over one year, the debtor was operating profitably, and no marketing efforts had been taken. In this case, the case has only recently been filed, and the Debtor is not operating profitably

-4-

39977

committee's insistence on a sale was not a good business reason.  Id. at 1071.  The Lionel court

did articulate the following:

> In fashioning its findings, a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest group; rather, he should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.  He might, for example look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale, or lease the proposal envisions, and **most importantly perhaps, whether the asset is increasing or decreasing in value.**  Id. at 1071 (emphasis added).

The Sixth Circuit, by adopting the Lionel rational in its Stephens Industries decision, also

rejected the emergency requirement for sales of assets in favor of a flexible test to determine

whether there is an articulated business reason for the sale, whether the sale is in the best interest

of all the varying interest groups in a case, and whether adequate notice of the proposed use or

sale of the property has been provided to parties in interest.

10.     Since the Stephens Industries decision in 1986, many courts have applied the

standards set forth in Stephens Industries to allow sales of substantially all of a debtor's assets to

preserve the ongoing concern value of a business.  The court in In the Matter of Engineering

Products Co., Inc., 121 B.R. 246 (Bankr. E.D. Wis. 1990) used such as analysis.  The court in

Engineering Products was confronted with a proposed sale of substantially all of a debtor's assets

before a plan and disclosure statement had been filed.  Id. at 247.  The court, after considering

the decisions from the various United States Courts of Appeals approved the debtor's proposed

sale of substantially all of its assets provided the standards of Lionel, Stephens Industries, and In

re Abbotts Dairies Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986) were met.  Id. at 249.  Of

-5-

those standards which are summarized in paragraph 6 <u>supra</u>, the court indicated that "[o]f paramount importance is the existence of good faith---of full disclosure and fair dealing on the part of all interested parties." <u>Id.</u>

11.     More recent cases squarely addressing the question of a sale of substantially all of a debtor's assets outside of a plan of reorganization and disclosure statement list the elements necessary to approve such a sale as: "(1) a sound business reason **or** emergency justifies a pre-confirmation sale; (2) the sale has been proposed in good faith; (3) adequate and reasonable notice of the sale has been provided to interested parties; and (4) the purchase price is fair and reasonable." <u>In re WBQ Partnership</u>, 189 B.R. 97 (Bankr. E.D. Va. 1995) (emphasis added). The <u>WBQ</u> court was confronted with a proposed sale of a nursing home facility outside of a plan of reorganization. <u>Id.</u> at 100-01. In that case, the business justification was that the debtor was suffering from "'minimal cash flow'" and that it was unable to reorganize because of a loss of income. <u>Id.</u> at 102-03. Similarly, in this case, the Debtor is suffering a loss of sales and will be unable to reorganize because it still is unable to obtain sufficient capitalization to generate enough revenue to operate profitably.

12.     Next, is whether the sale has been proposed in good faith. In this instance, the proposed Purchaser is affiliated with the Debtor but has separate professionals. The negotiation of the purchase agreement will be at arm's length. The Purchaser presently intends to retain 90% or more employees of the Debtor after the sale. Additionally, the Debtor's shareholder stands to receive nothing through the sale either by way of distributions or otherwise, outside of a plan in accordance with the Bankruptcy Code. These factors establish that the sale was proposed in good faith and not simply to benefit the Debtor's insiders.

-6-

39977

13.     The Debtor's notice of the proposed sale will include the information determined by courts to be "adequate" information under the circumstances.  Information required in such notices includes a description of the property to be sold, the purchase price, the manner of payment, fixes a period for filing objections, and identifies the proposed buyer.  WBQ, 189 B.R. at 103.    Attached to the Debtor's Motion for Approval of Bidding Procedures to be filed contemporaneously with the Sale Motion, is a proposed notice for the Court's consideration. The Debtor submits that its notice is adequate for the purpose of the sale of its assets proposed; however, the Debtor will alter its notice to include any additional information the Court may require.

14.     The final element enumerated in the case law to be considered is whether the sale price is fair and reasonable.  Id. at 104.  The WBQ court compared the sale price against the replacement cost, the ongoing concern value, and the as-is value, of the assets.  Id.  The WBQ court determined that a price equaling the as-is price was fair and reasonable even though the ongoing concern value was 28% ($145,000) higher.  Id.

15.     The Debtor believes that its case is most similar to that of In re Weatherly Frozen Food Group, Inc., 149 B.R. 480 (Bankr. N.D. Ohio 1992).  In that case, the debtor produced frozen specialty ice cream products and negotiated its customer contracts in the late fall of each year.  Id. at 482.  An involuntary petition was filed in June of 1991 but due to the procedural history of the case, no order for relief was entered until September 6, 1991.  Id. at 481.  On September 28, 1992, the debtor filed its motion for a sale of substantially all of its assets; which were encumbered and the only assets remaining after the sale for unsecured creditors were bankruptcy code chapter 5 causes of action (preferential transfers, fraudulent transfers, and the

39977

like). Id. at 481-82. In considering the business reason for the sale, the court considered the need to have negotiated customer contracts in order to generate future sales. Id. at 483. Similarly, because of the Debtor's position in web hosting business, uninterrupted servicing of its current customers is critical. The Debtor's customers must have a reliable website provided by the Debtor. Any loss of these customers would be disastrous to the Debtor's operations and its ability to sell its assets as an ongoing concern. This same scenario was presented in the Weatherly Frozen Food case, including the fact that little or no part of the purchase price was available to unsecured creditors. The preservation of the ongoing concern value of the business, through the customer contracts constituted a sound business justification for the sale. Id.

16.     The proposed sale of the Debtor's assets meets the requirements of section 363(f) and Stephens Industries for a sale free and clear of liens, claims and encumbrances. The Debtor will be able to establish one or more of the conditions of section 363(f) with respect to any lien holder at the hearing to be conducted by the Court on the Sale Motion. Accordingly, the Court should grant the Debtor authority to sell its assets free and clear of liens, claims, encumbrances, and interests.

17.     The Debtor operated unprofitably for some time before the Petition Date. Ultimately, the Debtor will be forced to shut down, thereby causing liquidation of its assets. A liquidation, rather than a sale as an ongoing concern as proposed in the Sale Motion, will produce much less for distribution to creditors than the sale proposed in the Sale Motion. Thus, the Debtor has a sound business purpose for selling the Assets.

-8-

39977

## IV. CONCLUSION

For the reasons set forth above, the Debtor's Motion for Order Authorizing (I) The Sale of Substantially All of Its Assets, Free and Clear of Liens, Claims, Encumbrances, and Interests and (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases is in the best interests of Debtor and its estate and creditors and should be granted by the Court in its entirety.

Respectfully submitted,

/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
3930 Fulton Drive NW, Suite 100B
Canton, Ohio 44718
Telephone: 330-305-9700
Facsimile: 330-305-9713
E-mail: ajdlaw@sbcglobal.net

PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION

-9-

39977