**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, CANTON**

```
------------------------------------------------------------x
In re:                                          :    Case No. 16-60607
                                                :
THOUGHTWIRE MEDIA, LLC[1]                       :    Chapter 11
                                                :
                                                :    Judge Russ Kendig
                                                :
           Debtor and                           :
           Debtor-in-Possession.                :
                                                :
(Employer Tax I.D. No. 27-3153003)              :
------------------------------------------------------------x
```

**DEBTOR'S RESPONSE TO COMBINED OBJECTION OF CREDITOR, INVESTMENT
GUIDANCE SYSTEMS, LLC TO:**

**DEBTOR'S MOTION FOR ORDER AUTHORIZING (I) THE SALE OF
SUBSTANTIALLY ALL OF ITS ASSETS, FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS AND (II) THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
<u>CONTRACTS AND UNEXPIRED LEASES</u>**

**AND**

**DEBTOR'S AMENDED MOTION FOR AN ORDER APPROVING
BIDDING PROCEDURES REGARDING DEBTOR'S PROPOSED SALE OF
SUBSTANTIALLY ALL OF ITS ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS AND THE ASSUMPTION AND ASSIGNMENT
<u>OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

---

[1] The Debtor also used the following business names: VPS6; Thoughtwire Hosting; Thoughtwire Marketing; Thoughtwire Mobile; and Websites.

Now comes Thoughtwire Media, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned counsel and hereby submits its Response to the Combined Objection of Investment Guidance Systems, LLC (Docket No. 50) (the "Objection").

In support of this Response, the Debtor respectfully represents as follows:

1. Investment Guidance Systems, LLC ("IGS"), while a holder of a claim as that term is defined under the Bankruptcy Code, its "claim" is in actuality, a hail mary pass.

2. In the litigation commended in 2012 in Massachusetts, IGS seeks to bootstrap itself into the position of the counter party of a contract with a predecessor of the Debtor, Advanced Media Productions, Inc. ("AMP") that the Debtor is alleged to have assumed. A review of the asset purchase agreement attached to the Objection contains no provision for the assumption of contracts from AMP, much less, a schedule of assumed contracts listing IGS's contract. By IGS's own allegations in the Objection, AMP had performed under the contract by January 2011: long before the Debtor purchased some of AMP's assets. Also, there no finding in the lawsuit filed by IGS that the Debtor assumed IGS's contract with AMP. IGS begins its analysis asking the court to assume something that is not in the documents or court orders presented to this Court.

3. Next, building on the foundation of sand that IGS is the counterparty of an assumed contract, it alleges that it holds a claim of $1,138,383.00 predicated on its lost profits. Under Massachusetts law, lost profits cannot be speculative and the claimant must have mitigated its damages. See, Brewster Wallcoverings Co. v. Blue Mt. Wallcoverings, Inc., 864 N.E.2d 518, 68 Mass. App. Ct. 582 (MA. Ct. App. 2001). Neither has been established by IGS

in the state court case after 4 years of litigation. In short, IGS is the holder of a claim in name only. The validity and amount of its claim remains to be established.

4.     IGS makes much of the specter of undue influence by Directory Concepts, Inc. ("DCI") over the Debtor by virtue of its position as the senior secured creditor owned by Mr. Thomas Hickox. It is hard to imagine Mr. Hickox obtaining more control over the Debtor through DCI then he already has by virtue of being the Debtor's sole owner. IGS cannot point to any instance of wrongdoing or "undue influence" by DCI over the Debtor, only that "it creates an environment in which undue influence may be exercised by the lender…." Objection at para 13. IGS points to the DCI loan documents as what it considers undue influence. Objection at para. 14. Considering the typical language in loan documents from commercial lending institutions, the language in DCI's loan documents is relatively generous.

5.     The Office of the United States Trustee (the "UST") has expressed some of the same concerns as IGS regarding the relationship between the Debtor, DCI, and Mr. Hickox. To alleviate the UST's concerns, the Debtor has modified the bidding procedures. A blacklined version of the bidding procedures is attached hereto as Exhibit A. Accordingly, any concerns over undue influence over the sale process by DCI are unwarranted.

6.     The remainder of IGS's Objection goes to the actual sale itself rather than the bidding procedures. IGS complains of the valuation provided by the Debtor—without producing its own actual valuation or professional who may value the Debtor's assets. IGS also complains that Mr. Furlow lacks accreditation. In fact, to provide the court with an appraisal or expert opinion, the individual does not have to have to be accredited, he simply must be qualified to provide their opinion or appraisal. Mr. Furlow is certainly qualified as will be demonstrated to this Court.

7. IGS also complains that DCI's debt ought to be recharacterized as equity. Again, this issue does not go to the sale process or bidding. Nevertheless, the standard for recharacterization adopted by the Sixth Circuit Court of Appeals is as follows:

> The factors are: (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

Bayer Corp. v. MascoTech, Inc. (In re Autostyle Plastics, Inc.), 269 F.3d 726, 750-51(6th Cir. 2001), quoting Roth Steel Tube Co. v. Comm'r of Internal Revenue, 800 F.2d 625, 630 (6th Cir. 1986). While a determination of DCI's status as secured creditor is not necessary for approval of the bidding procedures for the sale, DCI is confident that the Court will find DCI's claims are in fact secured claims at the appropriate time.

8. IGS ultimately raises issues related to the trial schedule Massachusetts, the Debtor's use of names of affiliated companies, and other unknown and unspecified "factors" that could lead to equitable subordination of DCI's and Thomas Hickox's claims. In fact, the trial in Massachusetts has been continued indefinitely due to the health of IGS's owner—there is no trial date. Further, as shown by its lack of profitability (evidenced by the $993,383 in secured debt to DCI and Hickox and cash flow projections showing the Debtor losing money) and unsustainable costs and risks of the litigation with IGS, the sale of its assets is the only viable option for the Debtor, short of simply shutting down its operations to the detriment of all of its customers.

9. Taken as a whole, IGS's Objection fails to demonstrate that the Debtor's sale process should not proceed. IGS's issues go to ultimate approval of a sale, disposition of sale

4

proceeds if any, allowance of claims, and other non-sale issues. Accordingly, the Court should approve the bidding procedures as amended in negotiations with the UST, and overrule IGS's Objection as it relates to the bidding procedures.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, approving the bidding procedures, overruling the Objection to the extent is applies to the Debtor's bidding procedures, and granting such other and further relief as the Court may deem proper.

Respectfully submitted,

/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
Selena E. DeGirolamo (0092050)
3930 Fulton Dr., Ste. 100B
Canton, Ohio 44718
Telephone: (330) 305-9700
Facsimile: (330) 305-9713
E-mail: ajdlaw@sbcglobal.net
sedlaw@sbcglobal.net

PROPOSED COUNSEL FOR
THE DEBTOR AND
DEBTOR IN POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2016, a copy of the foregoing Response was electronically transmitted via the Court's CM/ECF system to those listed on the Court's Electronic Mail Notice list:

- Tiiara N. A. Patton     tiiara.patton@usdoj.gov
- United States Trustee    (Registered address)@usdoj.gov
- Chrysanthe E. Vassiles     cvassiles@bmsa.com

    /s/ Anthony J. DeGirolamo
    Anthony J. DeGirolamo

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, CANTON

---------------------------------------------------------x
In re: : Case No. 16-60607
 :
THOUGHTWIRE MEDIA, LLC[1] : Chapter 11
 :
 : Judge Russ Kendig
 :
      Debtor and :
      Debtor-in-Possession. :
 :
(Employer Tax I.D. No. 27-3153003) :
---------------------------------------------------------x

**NOTICE OF (I) DEBTOR'S PROPOSED SALE OF SUBSTANTIALLY ALL OF ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO AND (II) OPPORTUNITY TO BID TO PURCHASE THE DEBTOR'S ASSETS PURSUANT TO COMPETITIVE BIDDING PROCEDURES**

TO ALL PARTIES IN INTEREST AND PROSPECTIVE BIDDERS:

PLEASE TAKE NOTICE THAT the above captioned debtor and debtor in possession (the "Debtor") has filed its Motion for Order Authorizing (I) the Sale of Substantially All of Its Assets, Free and Clear of Liens, Claims, Encumbrances, and Interests and (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (the "Sale Motion") pursuant to 11 U.S.C. §§ 363(b) and (f) and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the Bankruptcy Code").

**ASSETS TO BE SOLD**

The Debtor proposes to sell all, or substantially all, of its assets at the following location: 1669 Lexington Avenue, Suite B, Mansfield, Ohio 44907, all of which, taken together, constitute all of the Debtor's assets including but not limited to equipment and accounts receivable (the "Sale Assets"). The Debtor further proposes to assume and assign certain executory contracts and unexpired leases (the "Assumed Contracts") associated with the Sale Assets. The Assumed Contracts to be assumed and assigned to the winning bidder pursuant to its winning bid shall be identified by the Debtor prior to the Sale Hearing (as defined below).

**SALE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

Pursuant to sections 363(b) and (f) of the Bankruptcy Code, and subject to any orders entered by this Court with regard to bidding procedures, the Debtor will seek authority to sell all of its right, title, and interest

---

[1] The Debtor also used the following business names: VPS6; Thoughtwire Hosting; Thoughtwire Marketing; Thoughtwire Mobile; and Websites.

in the Sale Assets to the Qualified Bidder (as defined below) submitting the highest and best Qualified Bid (as defined below) in accordance with the Bidding Procedures (as defined below), free and clear of any liens, claims, encumbrances, and other interests, with all liens, claims, encumbrances, and interests to attach to the proceeds of such sale.

### AUCTION, BIDDING PROCEDURES, AND SALE HEARING

#### The Auction

In the event the Debtor receives more than one Qualified Bid, the Debtor shall conduct an auction (the "Auction") for all of the Sale Assets. The Auction shall take place on April 22, 2016, commencing at 10:00 a.m., at the offices of Anthony J. DeGirolamo, Esq., 3930 Fulton Drive NW, Suite 100B, Canton, Ohio 44718. Only parties submitting Qualified Bids (a "Qualified Bidder") shall be permitted to participate in the Auction.

#### The Bidding Procedures

To become a qualified bid (a "Qualified Bid"), a bid must comply with the following requirements (the "Bidding Procedures"):2

a. A Qualified Bid must:

   i. be submitted, on or before 3:00 p.m. (EDT) April 18, 2016, to Anthony J. DeGirolamo, Esq., 3930 Fulton Drive NW, Suite 100B, Canton. Ohio 44718,, facsimile number (330) 305-9713, in the form of a written offer to purchase all or part of the Sale Assets together with the form of Asset Purchase Agreement to be provided by the Debtor to all interested bidders, with copies of the same to Jay Wagner, Esq., Wagner Law Firm, P.O. Box 576, Galion, Ohio 44833, duly executed by the bidder. Any bidder may obtain a copy of the ~~Competing Offer~~Qualified Bid, including the Asset Purchase Agreement by request therefore ~~to the Debtor or~~ to Anthony J. DeGirolamo at the address and contact information below;

   ii. include a cashier's check in the amount of $35,000 (the "Deposit"), which cashier's check shall be made payable to the Debtor and delivered with the original of such bid. Except for the Deposit of the bidder whose bid is ultimately approved by the Court, and the Deposit of the bidder making the second highest and best bid, all Deposit checks will be returned upon the entry of an order of the Court approving the sale of all or less than all of the Sale Assets contained in the bid (the "Sale Order"). The winning bidder must deposit an additional 5% ("Winning Deposit") with the Debtor within 24 hours of entry of the Sale Order. The deposits of the winning bidder, including the initial Deposit and the Winning Deposit, shall be deposited into an interest-bearing escrow account pending closing of the sale transaction; the Deposit of the bidder making the second highest and best offer shall be held for ten business days in an interest bearing account and such bidder shall be bound by the terms of its offer for such ten business days; and

   iii. include evidence satisfactory to the Debtor of the bidder's financial ability to consummate its acquisition of any of the Sale Assets.

---

2 See table of relevant dates attached hereto.

58969

2

b. A Qualified Bid must include, if appropriate, copies of any proposed ancillary agreements to be entered into between the Qualified Bidder and the Debtor or any person or entity affiliated with any of the Debtor.

c. On April 19, 2016, the Debtor shall file with the Court and provide a copy to the United States Trustee a notice that identifies any bids that were submitted and were determined by the Debtor to not be a Qualified Bid ("Notice of Rejected Bids"). The Notice of Rejected Bids shall include the identity of the bidder, the amount of the bid submitted, a summary of terms of the bid submitted and the reason the Debtor determined that the bid was not a Qualified Bid.

d. The Debtor shall consult with any official committee appointed in this case on Qualified Bids, the Auction, determination of winning bid and all other matters related to the proposed sale.

e. In the event one or more Qualified Bids acceptable to the Debtor are submitted, the Debtor shall conduct the Auction. The Auction shall take place by open bidding and will be presided over by the Debtor pursuant to the Bidding Procedures. Bidding at the Auction Sale shall be limited to those persons or entities who constitute Qualified Bidders. Commencing with the highest and best Qualified Bid submitted by one or more Qualified Bidder(s) as determined by the Debtor, and after consultation with the Lender, the first competing bid must equal or exceed the highest purchase price value by at least 5%, with every bid thereafter to increase in increments of at least $20,000.

f. Upon completion of the Auction, the Debtor shall: (i) file a notice of the winning bidder with the Court the day after the auction; and (ii) present the winning Qualified Bid(s) to the Court at the Sale Hearing. The notice shall be accompanied by the proposed purchase agreement and sale order and shall be served by fax, email, or (if neither is available) fed ex to all counterparty whose contracts are to be assumed and assigned.

g. A Qualified Bid must provide that it is subject to no further due diligence.

h. A Qualified Bid may not be subject to any financing contingency.

i. A Qualified Bid must state that the offeror is prepared to consummate the transaction within two business days of the date of the Sale Order, it being understood that the Debtor will request that the Court order that the temporary stay otherwise imposed by Rule 6004(g) of the Federal Rules of Bankruptcy Procedure be lifted with respect to the Sale Order.

j. Unless the offeror has previously executed a confidentiality agreement with the Debtor, a Qualified Bid must be accompanied by an executed confidentiality agreement with the Debtor, the form of which is available from Debtor's counsel.

k. A Qualified Bid must state that the offeror expressly consents to the jurisdiction of the U.S. Bankruptcy Court, Northern District of Ohio, Eastern Division, and that all disputes concerning the sale of the Sale Assets shall be resolved by that Court.

l. Any secured party wishing to exercise its rights under 11 U.S.C. § 363(k) to credit bid its claim must file a notice of its intent to credit bid, and serve such notice so as to be received by the Debtor's counsel, no later than 3:00 p.m. (EDT), April 18, 2016. These procedures shall neither constitute a legal determination regarding the extent of a secured party's right to credit bid under section 363(k) nor preclude the Court from determining that cause exists for entry of

58969

3

an order barring credit bids, and all parties in interests' rights to object to a credit bid are expressly reserved. Such determinations may be made at any time prior to or contemporaneous with entry of the Sale Order. Notwithstanding the foregoing, any secured party shall not be precluded from submitting a collective credit bid in which substantially all secured parties participate. Any secured party that files a notice of intent to credit bid is obligated to comply with these bidding procedures, other than paragraphs a(ii) and (iii), c, d, ~~e, f, g, h, i, and~~ k, and l.

k.m.  In the event a sale of all or part of the Sale Assets to the Qualified Bidder(s) making the highest and best offer does not close, it shall forfeit its Deposits, and the Debtor may proceed to sell all or part of the Sale Assets to the Qualified Bidder(s) whose offer was determined to be the second highest and best offer.

l.n.  The Debtor may establish such other rules of bidding as may be necessary for the Auction process itself and to facilitate efficient bidding at the Auction, before any bidding commences.

### APPOINTMENT OF CONSUMER PRIVACY OMBUDSMAN

If pursuant to 11 U.S.C. § 363(b)(1), the Debtor in connection with the proposed sale intends to sell personally identifiable information about individuals ("PII"), and has a policy in effect on the petition date that prohibits the transfer of the PII, then the United States Trustee appoint a consumer privacy ombudsman (the "Ombudsman") in accordance with 11 U.S.C. § 332(a) no later than the date that is seven (7) days before the Sale Hearing. If appointed, the Ombudsman shall (i) perform the functions set forth in 11 U.S.C. § 332(b) and (ii) at all times comply with 11 U.S.C. § 332(c). The Ombudsman shall be compensated pursuant to 11 U.S.C. § 330 upon approval by the Court of a request for compensation.

### THE SALE HEARING

The Court will hold a hearing (the "Sale Hearing") on the Sale Motion on April 28, 2016, at 2:00 p.m. before the Honorable Russ Kendig, in the United States Bankruptcy Court, 401 McKinley Avenue SW, Canton, Ohio 44702. At the Sale Hearing, the Debtor shall seek approval of the proposed sale of the Sale Assets.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Sale Motion must be filed with the Court and served upon the following so as to be received within ten days of the date of this Notice.

**Anthony J. DeGirolamo, Esq.**
**3930 Fulton Drive NW, Suite 100B**
**Canton, Ohio 44718**
**Facsimile No. (330) 305-9713**

**Office of the United States Trustee**
**Attn: Tiiara N. A. Patton, Esq.**
**Howard Metzenbaum Courthouse**
**201 Superior Avenue E, Suite 441**
**Cleveland, Ohio 44114-2301**
**Facsimile No. (216) 522-7193**

**Jay Wagner, Esq.,**
**Wagner Law Firm,**
**P.O. Box 576,**
**Galion, Ohio 44833**

58969

4

     **Facsimile No. (216) 462-5058**

If no objection is filed and served in the manner described above, the Court may grant the relief requested in the Sale Motion without further notice or hearing.

Dated: ~~March~~ April___, 2016                     Respectfully submitted,

                                                 /s/ Anthony J. DeGirolamo
                                                 Anthony J. DeGirolamo (0059265)
                                                 3930 Fulton Drive NW, Suite 100B
                                                 Canton, Ohio 44718
                                                 Telephone: (330) 305-9700
                                                 Facsimile: (330) 305-9713
                                                 E-mail: ajdlaw@sbcglobal.net

                                                 PROPOSED COUNSEL FOR DEBTOR
                                                 AND DEBTOR IN POSSESSION

58969

TABLE OF RELEVANT DATES

| EVENT | DATE |
|---|---|
| ~~Deadline for Objecting to Sale~~ | ~~Must be filed within 10 days of the date of the Sale Notice~~ |
| Bid Submission Deadline | 4/18/2016 before 3:00 p.m. |
| Credit Bid Submission Deadline | 4/18/2016 before 3:00 p.m. |
| ~~Auction~~Notice of Rejected Bids | 4/19/2016 by 4:00 p.m. ~~4/22/2016 at 10:00 a.m.~~ |
| Auction~~Hearing on Sale Motion~~ | 4/22/2016 at 10:00 a.m. ~~4/28/2016 at 2:00 p.m.~~ |
| Deadline for Objecting to Sale | 4/25/2016 |
| Hearing on Sale Motion | 4/28/2016 at 2:00 p.m. |

58969

6