**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 02:32 PM May 5, 2016**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION, CANTON

---------------------------------------------------------x

In re:           :   Case No. 16-60607

                    :

THOUGHTWIRE MEDIA, LLC[1]   :   Chapter 11

                    :

                    :   Judge Russ Kendig

                    :

       Debtor and        :

       Debtor-in-Possession.   :

                    :

(Employer Tax I.D. No. 27-3153003)   :

---------------------------------------------------------x

**AGREED ORDER PURSUANT TO 11 U.S.C. §§ 363(b), (f), (m), AND 365, AND FED. R. BANKR. P. 6004, 6006, AND 9014 (I) AUTHORIZING THE DEBTOR TO SELL SUBSTANTIALLY ALL OF ITS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND (II) TO ASSUME AND ASSIGN <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO</u>**

Before the Court is the Motion (the "Sale Motion"), Docket No. 12, filed by the above-captioned debtor and debtor in possession (the "Debtor") on March 25, 2016, requesting (among other things) the entry of an order pursuant to sections 363(b), (f), and (m), and 365 of title 11,

---

1 The Debtor also used the following business names: VPS6; Thoughtwire Hosting; Thoughtwire Marketing; Thoughtwire Mobile; and Websites.

United States Code (the "Bankruptcy Code"), and Rules 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the sale (the "Sale") of the assets used in the Debtor's operations free and clear of all liens, claims, encumbrances, and interests of whatever type or nature (collectively, the "Interests"), (ii) authorizing the Debtor to assume and assign to the Purchaser, as defined herein, certain executory contracts and unexpired leases associated with the Debtor's business and (iii) granting related relief; and the Objection to the Sale Motion filed by Investment Guidance Systems, LLC ("IGS"), Docket No. 50 (the "Objection"); this Court having set May 5, 2016, as the date for the sale of the Assets and the assumption and assignment of the Assigned Contracts, both as defined herein; the Debtor having determined that the Purchaser's bid is the best and highest bid for the Assets; the Court having reviewed and considered the Sale Motion and it appearing that the relief requested in the Sale Motion is in the best interest of the Debtor, its estate, creditors, and other parties in interest in this case, after due deliberation thereon; "Purchase Agreement" meaning the agreement or agreements between the Debtor as seller, on the one hand, and Directory Concepts, Inc. ("Purchaser") as buyer; "Assets" meaning the assets to be sold to the Purchaser pursuant to the Purchase Agreement, more fully described on Exhibit A attached hereto; and "Assigned Contracts" meaning the executory contracts and unexpired leases to be assumed and assigned to the Purchaser shown on Exhibit A attached hereto; and based upon the agreement of the parties evidenced by the signatures below and good cause appearing therefore, it is hereby FOUND AND DETERMINED AS FOLLOWS:

A.  The Court has jurisdiction over the Sale Motion and the transactions contemplated by the Sale Motion pursuant to 28 U.S.C. § 1334 and reference from the District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 157.  This matter is a core proceeding pursuant

127221

to 28 U.S.C. § 157(b)(2).  Venue of this case and the Sale Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  The statutory predicates for the relief requested in the Sale Motion are sections 363(b), (f), and (m), and 365 of the Bankruptcy Code and Rules 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure.

C.  As evidenced by the affidavit of E. Matthew Enderle, the affidavits of service, Docket Nos. 15 and 54, previously filed with the Court, and based on the representations of counsel at the hearing held on May 5, 2016, on the Sale Motion (the "Hearing") and upon further notice under Rule 6006 of the Federal Rules of Bankruptcy Procedure provided on May 5, 2016, to any non-Debtor party to an executory contract that the Debtor proposes to assume and assign to the Purchaser, together with proposed cure amounts to be paid by the Purchaser; (i) proper, timely, adequate, and sufficient notice of the Sale Motion and the sale has been provided in accordance with sections 363 and 365 of the Bankruptcy Code and Rules 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure; (ii) such notice was reasonable, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Sale Motion, is required.

D.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) counsel for the Purchaser; (ii) counsel for the Debtor's prepetition secured lender(s); (iii) the Office of the United States Trustee; (iv) all entities known to have asserted any lien, claim, encumbrance, alleged interest in or with respect to the Assets; (v) all non-Debtor parties to the Assigned Contracts upon notice provided under paragraph C hereof; and (vi) all other entities that have filed requests for notices pursuant to Bankruptcy Rule 2002, with the only objection to the Sale Motion being the aforementioned Objection.

127221

E. The Objection has been resolved by agreement among the objector, IGS, the Debtor, and the Debtor's principal as follows: (i) the Debtor will exclude from the sale all files and property in the possession of the Debtor claimed by IGS and deliver such property and files to IGS at or before the closing of the Sale; and (ii) the Debtor's principal will pay Thirty-five Thousand and 00/100 dollars ($35,000.00) of personal funds which are not property of the estate to IGS on or before the closing of the Sale, subject to a final negotiated settlement agreement among IGS, and Thomas Hickox, all in complete satisfaction of any and all claims IGS may hold related to its claimed contract with the Debtor. The foregoing is not to be interpreted or construed as Court approval of any settlement between IGS and Thomas C. Hickox.

F. The Debtor has demonstrated sound business justifications for the Sale and the related transactions pursuant to section 363(b) of the Bankruptcy Code.

G. The Sale was negotiated, proposed, and agreed to by the Debtor and the Purchaser as parties thereto without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the Sale to be avoided under section 363(n) of the Bankruptcy Code. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

H. The consideration provided by the Purchaser for the Assets and the Assigned Contracts (i) is fair and reasonable; (ii) is the highest and best offer for the Assets and the Assigned Contracts; and (iii) will provide a greater recovery for the Debtor's creditors and other interested parties than would be provided by any other available alternative.

I. The sale of the Assets to the Purchaser under the terms of this Order will be a legal, valid, and effective transfer, and will vest in the Purchaser all right, title, and interest of the Debtor to the Assets free and clear of all Interests including, but not limited to, those (i) that

4

127221

purport to give to any party a right or option to consummate in the future, any sale, contingent sale, title retention agreement or lease relating to the Assets (or a right or option to terminate the Debtor's or the Purchaser' rights therein), or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the date (the "Closing Date") of the consummation of the Sale (the "Closing"); with such Interests attaching to the proceeds of sale in the same priority as existed on the Petition Date subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

J.  The Debtor may sell the Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  Those holders of Interests and non-Debtor parties who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests fall also within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they claim or may claim an Interest.

K.  Approval and consummation of the Sale at this time is in the best interest of the Debtor, its creditors, its estate, and other parties in interest.

L.  The Purchaser would not consummate the transactions contemplated by the Sale, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Assets were not free and clear of all Interests of any kind or nature whatsoever, or if each Purchaser would, or in the future could, be liable for any such Interests and if the transfer could not be made under section 363 of the Bankruptcy Code.

127221

NOW, THEREFORE, BASED UPON THE FOREGOING FINDINGS OF FACT, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, EFFECTIVE IMMEDIATELY, THAT:

1. The Sale Motion shall be, and hereby is granted, as further described herein, and the Objection is withdrawn.

2. In exchange for withdrawal of the Objection, the Debtor shall exclude from the sale all files and property in the possession of the Debtor claimed by IGS and deliver such property and files to IGS at or before the closing of the Sale and such property will not be part of the Assets.

3. Defined terms not otherwise defined in this Order shall have the meanings given them in the Sale Motion.

4. All objections and responses to the Sale Motion, including all reservations of rights included therein that have not been overruled, withdrawn, waived, settled, continued, or resolved, are hereby overruled and denied.

5. The Sale as presented to the Court at the hearing on this matter, and all of the terms and conditions thereof, are hereby approved as if fully stated herein, and the Debtor is hereby authorized to execute the Purchase Agreement on such terms as contained therein. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, and in accordance with the terms thereof, as may be necessary to give effect to the intent of the parties as represented to the Court and consummate the transactions contemplated by such agreements, documents or instruments without further order of the Court, provided that any such modification, amendment or supplement is not materially different from the terms presented to the Court and does not have a material adverse effect on the Debtor's estate as defined herein, in form and substance.

127221

6.   Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to consummate the Sale, pursuant to and in accordance with the terms and conditions of the Purchase Agreement and to take all actions and execute all documents as may be necessary to consummate the Sale or effect the transactions referenced in or otherwise contemplated by the Purchase Agreement.

7.   The Debtor is authorized and directed to execute and deliver, and is empowered to perform under, consummate, and implement, the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, and conveying to the Purchaser or reducing to possession the Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

8.   In connection with the assumption and assignment of the Assigned Contracts, the Purchaser shall promptly pay or agree to the payment terms for all Cure Amounts and provide each counterparty with adequate assurance of future performance.   The Notice of Debtor's Proposed Assumption and Assignment and Cure of Defaults Under Certain Executory Contracts and Unexpired Leases Pursuant to Sale Order attached hereto as Exhibit B is approved in all respects.   Any non-Debtor party to an Assigned Contract that disagrees with or disputes the Cure Amount must file an objection to the Cure Amount no later than June 6, 2016.   In the event that no objection to the Cure Amount is filed, then the non-debtor party to the Assigned Contract shall be deemed to have waived any objection thereto, and the Cure Amount shall be deemed binding on the non-Debtor party and the Purchaser.   The Debtor shall not be required to take any other action or to make any other payment with respect to any defaults under the Assigned Contracts.   All non-Debtor parties to Assigned Contracts are hereby enjoined and forever barred

7

from asserting any claim or default, including termination of any Assigned Contract by reason of any claim or default which may exist under such Assigned Contracts, except as may be specified in the Purchase Agreement or as otherwise set forth in this Order.

9.   Subject to the provisions of paragraph 7 of this Order, the Debtor is authorized and directed to assume and assign the Assigned Contracts to the Purchaser, free and clear of all Interests, and the assignment of the Assigned Contracts is valid under section 365 of the Bankruptcy Code and the Assigned Contracts will be deemed to have been assumed by the Debtor and assigned to the Purchaser effective as of the Closing Date.   Pursuant to section 365(k) of the Bankruptcy Code, the assignment by the Debtor of the Assigned Contracts relieves the Debtor and its estate from any liability from any breach of the Assigned Contracts after the Closing Date.

10. The purchase price to be paid by the Purchaser for the sale and transfer of the Assets under the terms of the Sale and the Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.   The sale of the Assets and other transactions contemplated by the Purchase Agreement may not be avoided under sections 363(k) or (n) of the Bankruptcy Code.

11. The transactions contemplated by the Sale and the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of this Order shall not affect the validity of the Sale of Assets to the Purchaser, unless such Sale and this Order are duly stayed pending appeal.   The Purchaser is a purchaser in good faith of the Assets for all purposes.

12. All of the Debtor's interest in the Assets shall be, as of the Closing Date, transferred to and vested in the Purchaser.   Upon the Closing Date, this Order shall be considered and

127221

constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of any assets acquired by the Purchaser under the Purchase Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the assets acquired by the Purchaser under the Purchase Agreement. In accordance with the Sale and the Purchase Agreement, from and after the Closing Date, the Purchaser shall be granted immediate and unfettered access to the Assets.

13. Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement and this Order, pursuant to sections 105(a), 363(f), and 365 of the Bankruptcy Code, the Assets shall be transferred to the Purchaser free and clear of all Interests of any kind or nature whatsoever, (including but not limited to any liens, claims, rights or encumbrances of any governmental authority or entity, and any other claims, known or unknown, contingent or non-contingent for any environmental liability or products liability), with all such Interests to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they now have as against such assets, subject to any claims and defenses that the Debtor and other parties having Interests in the Assets may possess with respect thereto.

14. Except as expressly permitted by applicable law or otherwise specifically provided for in the Purchase Agreement, or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and other regulatory authorities, lenders, trade and other creditors holding Interests of any kind or nature whatsoever against or in the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the Closing Date, are hereby forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns (to the extent allowed by law), its

127221

property, its officers, and any directors and shareholders of the Purchaser, such persons' or entities' Interests; provided however, both the Debtor and the Purchaser shall be jointly and severally liable for payment of all fees incurred to the Office of the United States Trustee for the pendency of this case. All holders or beneficiaries of the Interests are hereby directed to cooperate with the Purchaser in delivering such documents reasonably requested by the Purchaser, which may be necessary to evidence and effectuate the extinguishment of any Interests from or against the Assets.

15. If any person or entity that has filed financing statements, assignments, security agreements, lis pendens, or other documents or agreements evidencing Interests in any of the Assets shall not have delivered to the Debtor prior to the Closing Date in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and releases of all Interests which the person or entity has with respect to the Seller or otherwise, then (a) the Debtor is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets; and (b) the Purchaser are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all interests in the Assets of any kind or nature whatsoever.

16. This Court retains jurisdiction to endorse and implement the terms and provisions of the Sale and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser; (b) compel delivery of the Purchase Price or performance of other obligations owed to the Debtor; (c) resolve any disputes arising under or related to the Sale or the Purchase

127221

Agreement, except as otherwise provided therein; and (d) interpret, implement, and enforce the provisions of this Order.

17. To the extent not inconsistent with or prohibited by applicable law, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Assets other than those expressly assumed in the Sale and under the Purchase Agreement or arising under the Assigned Contracts from and after the Closing Date. Without limiting the generality of the foregoing exclusion, the Purchaser is assuming no obligation for, and (to the extent consistent with applicable law) shall have no responsibility with respect to, the Debtor's accounts payable or liabilities under environmental laws. The Purchaser shall be under no obligation to hire any of the Debtor's employees and shall not assume any obligations to or with respect to such employees, including, without limitation, any obligations for employment compensation, benefits or severance or any obligations under or with respect to any ERISA plan, any multiemployer plan or otherwise, including, without limitation, obligations arising under COBRA, any obligation to provide compensation or benefits pursuant to any employment contract, and any obligations under or with respect to any collective bargaining agreements. Except for such obligations expressly assumed by the Purchaser, all persons are hereby enjoined from asserting or prosecuting any claim against the Purchaser to recover on any claim such person had, has or may have against the Debtor, its estate or the Assets.

18. The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser, and their respective affiliates, successors, and assigns and any affected third parties (including, but not limited to, all non-Debtor parties asserting interests in the Assets), notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, upon which trustee such terms and provisions likewise shall be binding.

127221

19. The failure specifically to include any particular provisions of the Sale or the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Sale and the Purchase Agreement be authorized and approved in their entirety as if fully stated herein.

20. Any notices of appeal of this Order must be in writing and must be filed with the Court and served on (a) Anthony J. DeGirolamo, 3930 Fulton Drive NW, Suite 100B, Canton, Ohio 44718; and (b) Jay Wagner, Esq., Wagner Law Firm, P.O. Box 576, Galion, Ohio 44833. This Order shall be effective immediately upon its entry. The stays provided under Bankruptcy Rules 6004(g) and 6006(d) are both hereby waived and no stay shall apply to the Sale. This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rule 7062 or otherwise. This Order is, and shall be entered by the Clerk in the records of the Debtor's case as, a "final" order pursuant to Fed. R. Civ. P. 54 and 58 and Bankruptcy Rules 5003, 7054, and 9021.

###

**AGREED TO BY:**

<table>
<tr>
<td>

/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
3930 Fulton Drive NW, Suite 100B
Canton, Ohio 44718
Telephone: 330-305-9700
Facsimile: 330-305-9713
E-mail: ajdlaw@sbcglobal.net

COUNSEL FOR THE DEBTOR AND
DEBTOR IN POSSESSION

</td>
<td>

/s/ Chrysanthe E. Vassiles
Chrysanthe E. Vassiles (0066402)
Black, McCuskey, Souers, & Arbaugh
220 Market Avenue S, Suite 1000
Canton, Ohio 44702
Telephone: 330-456-8341
Facsimile: 330-456-5756
E-mail: cvassiles@bmsa.com

COUNSEL FOR INVESTMENT
GUIDANCE SYSTEMS LLC

</td>
</tr>
</table>

127221

REVIEWED BY:

<u>Tiiara N.A. Patton</u>
Tiiara N. A. Patton (NYS 4261798)
Trial Attorney
United States Department of Justice
Office of the United States Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue East
Suite 441
Cleveland, Ohio 44114
(216) 522-7800 ext. 250 – Telephone
(216) 522-7193 – Fax
tiiara.patton@usdoj.gov

127221

**EXHIBIT A**

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into this 5th day of May , 2016, by and between **Thoughtwire Media, LLC,** an Ohio limited liability company, having an address of 1669 Lexington Avenue, Suite B, Mansfield, Ohio 44907 ("**Seller**"), and **Directory Concepts, Inc.,** an Ohio corporation, having a principal place of business located at 1669 Lexington Ave., Suite B, Mansfield, Ohio 444907 (the "**Purchaser**").

WHEREAS, Seller is engaged in the business of digital marketing, website development, updates, mobile sites, and internet marketing (the "Business");

WHEREAS, Seller filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court") as Case No. 16-60607 (the "Bankruptcy Case") on March 25, 2016;

WHEREAS, upon the terms and subject to the conditions set forth herein and as authorized under the Bankruptcy Code, Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, substantially all of Seller's personal property assets ("Purchased Assets") in exchange for the payment to Seller of the Purchase Price and the assumption by Purchaser of the Assumed Liabilities; and

WHEREAS, the transactions contemplated by this Agreement (the "Transactions") are subject to the approval of the Bankruptcy Court and will be consummated only pursuant to this Agreement and a Sale Order, as below-defined, to be entered in the Bankruptcy Case and other applicable provisions of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter contained, and intending to be bound hereby, the parties hereby agree as follows:

### 1.0 Purchase and Sale of Assets

1.1 <u>Purchased Assets</u>. The Seller agrees to and shall sell, convey, transfer, assign and deliver to the Purchaser under the terms and conditions set forth herein, free and clear of all liens, mortgages, pledges, encumbrances, claims, charges and interests of every kind, on the terms and subject to the conditions set forth in this Agreement those assets listed on <u>Schedule A</u> which include, but are not limited to, all equipment and machinery, all inventory, all accounts, notes and other receivables, all intellectual property, all goodwill associated with the intellectual property, all other tangible and intangible property assets of Seller to the extent primarily used in or relating to the operating of the Business, and all Assumed Contracts listed on <u>Schedule B</u>.

1.2 <u>Excluded Assets</u>. Notwithstanding anything to the contrary contained in this Agreement, the Purchased Assets shall not include any of the following assets (collectively, the "Excluded Assets"): all causes of action arising or held by Seller under Chapter 5 of the

1

Bankruptcy Code; any minute books, stock ledgers, corporate seals and stock certificates of Seller, and other similar books and records that Seller is required by law to retain and all tax returns, financial statements and corporate or other entity filings; all insurance policies, all credits or premium refunds thereunder, all interests of Seller in any insurance policies, and the cash surrender value or other proceeds of, or claims of, such insurance policies; all rights and claims in or to any refunds or credits of, or with respect to any taxes, assessments or similar charges paid by or on behalf of Seller, in each case to the extent applicable to any period prior to the Closing Date (but, not any of the foregoing paid by Purchaser); any professional retainers paid by Seller; any and all rights, claims and benefits under any contract that is not an Assumed Contract; any other asset of Seller that is excluded pursuant to the terms of the Sale Order; and all assets of Seller not identified as a Purchased Asset or Assumed Contract or not otherwise identified herein.

1.3     Assumption of Liabilities.   On the terms and subject to the conditions and limitations set forth in this Agreement, at the Closing, Purchaser shall assume, effective as of the Closing, the following Liabilities of Seller existing as of the Closing (collectively, the "Assumed Liabilities") and no others:

(a)     all Liabilities arising after Closing under or pursuant to any Assumed Contracts which relate to the performance of the Assumed Contracts after Closing;

(b)     all Liabilities occurring, arising out of or relating to the ownership and operation of the Business and the Purchased Assets after Closing;

(c)     to the extent not paid at or prior to Closing, all claims and Liabilities for Cure Amounts; and

(d)     any other liability of Seller that is assumed by Purchaser pursuant to the terms of the Sale Order.

1.4     Assumed Contracts.

(a)     Assumed Contracts List.  Seller shall assume and assign to Purchaser all of the Assumed Contracts listed on Schedule B, as such Schedule may be supplemented by mutual agreement of Seller and Purchaser.

(b)     Payment of Cure Amounts.   To the extent not paid at or prior to Closing, Purchaser hereby agrees to pay all Cure Amounts, if any.

2.0     **Purchase Price; No Assumption of Liabilities or Successor; Hazardous Materials**

2.1     Purchase Price.  Purchaser agrees to pay the total sum of $350,000.00 for the Assets (the "Purchase Price") on the Closing Date, representing a credit bid for the purchased assets and assumed contracts.

2.2    No Assumed Liabilities.  Other than as otherwise agreed to herein, the Purchaser does not agree to and will not assume, be responsible for or agree to pay, discharge or perform when lawfully due any of the liabilities, contracts, commitments or other obligations of the Seller, including, without limitation, judgments, accounts payable, taxes, claims relating to products liability, securities law violations, pension welfare plan contributions, and collective bargaining agreements.

2.3    No Successor.  Purchaser shall not be a successor-in-interest to Seller and shall have no successor liability to Seller or any creditor, shareholder, officer or employee of Seller under any legal theory.

## 3.0    Closing and Sale Order

3.1    Time and Place of the Closing.  The closing of the sale of the Assets shall take place on or before May __, 2016, at a location to be agreed upon between the parties. Throughout this Agreement, such event is referred to as the "Closing" and such date is referred to as the "Closing Date."  It is intended that the Closing shall take place as soon as Purchaser has satisfied itself that the Seller and the named creditors can deliver clear title to the Purchased Assets upon their receipt of the Purchase Price.

3.2    Deliveries by Seller.  At the Closing, Seller shall deliver, or cause to be delivered to Purchaser:

(a)    the Bill of Sale;

(b)    the Assignment and Assumption Agreement;

(c)    the Assignment of Domain Names and Telephone Numbers Agreement;

(d)    the Sale Order; and

(e)    all other instruments of assignment, conveyance and transfer, together with any transfer declarations or other filings, in form and substance reasonably acceptable to Purchaser, as may be necessary to convey good and marketable title to the Purchased Assets to Purchaser in accordance with the terms and conditions hereof.

3.3    Deliveries by Purchaser.  At the Closing, Purchaser shall deliver, or cause to be delivered to Seller:

(a)    executed counterparts of the Bill of Sale;

(b)    executed counterparts of the Assignment and Assumption Agreement;

(c)    executed counterparts of the Assignment of Domain Names and Telephone Numbers Agreement; and

3

(d)    such other documents, instruments and certificates as Seller may reasonably request to transfer, assign and delegate the Purchased Assets and Assumed Liabilities to Purchaser in accordance with the terms and conditions hereof.

3.4    Other Closing Matters.    Each of the parties shall use their reasonable efforts to take such other actions required hereby to be performed by it prior to or on the Closing Date.

3.4    Additional Condition to Close (Entry of Sale Order).    Purchaser agrees that it will promptly take such commercially reasonable actions as are reasonably requested by Seller to assist in obtaining entry of an acceptable order under Section 363 of the Bankruptcy Code (the "Sale Order") and a finding of adequate assurance of future performance by Purchaser, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code.    In the event the entry of the Sale Order shall be appealed, Seller and Purchaser shall use their respective reasonable efforts to defend such appeal. Without limiting the generality of the foregoing, such Sale Order shall find and provide, among other things, that

(a) the Purchased Assets sold to Purchaser pursuant to this Agreement shall be transferred to Purchaser free and clear of all Liens, claims and interests, such Liens, claims and interests to attach to the Purchase Price;

(b) Purchaser has acted in "good faith" within the meaning of section 363 of the Bankruptcy Code;

(c) this Agreement was negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's length bargaining positions;

(d) the Bankruptcy Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement, or the breach hereof; and

(e) this Agreement and the Transactions may be specifically enforced against and binding upon, and not subject to rejection or avoidance by, Seller or any Chapter 7 or Chapter 11 trustee of Seller. In addition, the Sale Order shall approve and authorize the assumption and assignment of the Assumed Contracts such that the Assumed Contracts will be in full force and effect from and after the Closing with any non-Seller parties being barred and enjoined from asserting against Purchaser, among other things, defaults, breaches or claims (including cure claims under section 365 of the Bankruptcy Code, except as otherwise specifically provided in the Sale Order) existing as of the Closing or by reason of the Closing.

4.0    **Representations and Warranties of the Seller**

In order to induce the Purchaser to enter into this Agreement and to consummate the transactions contemplated hereunder, the Seller makes the following representations and warranties:

4

4.1     Power and Authority of the Seller.

(a)     Seller is a limited liability company duly organized and legally existing in good standing under the laws of the State of Ohio.

(b)     Seller has the power and authority to execute and perform this Agreement and all documents and instruments to be executed by each Seller pursuant to this Agreement. This Agreement has been duly executed and delivered by the Seller and constitutes an enforceable obligation of the Seller in the normal and ordinary course of Seller's business.

4.2     Good Title to and Condition of the Purchased Assets. Upon conveyance to the Purchaser, the Seller shall have good and marketable title to the Purchased Assets free and clear of all liens, mortgages, pledges, encumbrances, claims or interests.

4.3     Litigation Involving the Seller. There are no actions, suits, claims, governmental investigations or arbitration proceedings pending or to the knowledge of the Seller threatened against or affecting the Purchased Assets and, to the best of Seller's knowledge, there is no basis for any of the foregoing. To the best of Seller's knowledge, there are no outstanding orders, decrees or stipulations issued by any federal, state, local or foreign judicial or administrative authority in any proceeding to which the Seller is or was a party which would prohibit the sale of the Purchased Assets.

4.4     Accuracy of Information Furnished by the Seller. To the best of Seller's knowledge, no representation, statement or information made or furnished by the Seller to the Purchaser, including those contained in this Agreement and the various schedules attached hereto and the other information and statements referred to herein and previously furnished by the Seller to the Purchaser pursuant hereto, contains or shall contain any untrue statement of a material fact or omits or shall omit any material fact necessary to make the information contained therein not misleading.

4.5     Broker. The Seller has not employed or retained any person, firm or corporation to bring about or to represent it in the transactions contemplated hereby.

4.6     Miscellaneous. There are no pending lawsuits, no threatened lawsuits, and no asserted or threatened violations which may affect the Purchased Assets or any part thereof or Seller's ability to perform this Agreement.

**5.0     Additional Covenants of the Seller**

5.1     Best Efforts. The parties will use their best efforts to cause to be satisfied as soon as practicable and prior to the Closing Date all of the conditions to their respective obligations to effectuate the Transactions.

5.2     Conveyance of Title to Purchased Assets. Upon the payment of the Purchase Price, Seller shall convey title to Purchaser of the Purchased Assets.

5

## 6.0 Representation and Warranties of Purchaser

### 6.1 Power and Authority of the Purchaser.

(a) Purchaser is an Ohio corporation.

(b) Purchaser has the power and authority to execute and perform this Agreement and all documents and instruments to be executed by Purchaser pursuant to this Agreement. This Agreement has been duly executed and delivered by the Purchaser and constitutes an enforceable obligation of the Purchaser in the normal and ordinary course of Purchaser's business.

6.2 No Untrue Representation. To Purchaser's knowledge, no representation or warranty made by the Purchaser in this Agreement contains or will contain any untrue statement of a material fact.

6.3 Inspection of Purchased Assets. Purchaser acknowledges that it had an opportunity to inspect and did inspect all of the Purchased Assets to be sold under this Agreement and agrees to accept them as is, where is, with all faults, except that Purchaser shall have no obligation to accept any Purchased Asset which contain hazardous materials or which are contaminated.

## 7.0 Conditions to the Obligation of the Purchaser

The obligation of the Purchaser to purchase the Purchased Assets shall be subject to the fulfillment at or prior to the Closing Date of each of the following conditions:

7.1 Accuracy of the Seller's Representations and Warranties and Compliance by the Seller with Its Obligations. The representations and warranties of the Seller contained in this Agreement shall have been true and correct at and as of the date hereof, and they shall be true and correct at and as of the Closing Date with the same force and effect as though made at and as of that time. The Seller shall have performed and complied with all of its obligations required by this Agreement to be performed or complied with at or prior to the Closing Date.

7.2 Receipt of Necessary Consents. All necessary consents or approvals of third parties to any of the transactions contemplated hereby, the absence of which would materially affect Purchaser's rights hereunder, shall have been obtained and shown by written evidence satisfactory to the Purchaser.

7.3 No Adverse Litigation. There shall not be pending or threatened any action or proceeding by or before any court or other governmental body which shall seek to restrain, prohibit or invalidate the sale of the Purchased Assets to the Purchaser or any other transaction contemplated hereby, or which might affect the right of the Purchaser to own, operate in their entirety or control the Purchased Assets, and which, in the judgment of the Purchaser, makes it inadvisable to proceed with the transaction contemplated hereby.

6

## 8.0 Conditions to Obligations of Seller

8.1 The obligation of Seller to consummate the purchase and sale of the Purchased Assets as contemplated hereby is subject to the fulfillment of the conditions set forth in this Section at or prior to the Closing, any of which may be waived by Seller in its sole discretion.

(a) All of the agreements and covenants contained in this Agreement that are to be complied with, satisfied and performed by Purchaser on or before the Closing Date shall, in all material respects have been complied with, satisfied and performed.

(b) All of the representations and warranties made by Purchaser in this Agreement or in any certificate or document furnished or to be furnished to Seller hereunder, shall be true and correct in all material respects both on and as of the date of this Agreement, and on and as of the Closing Date.

## 9.0 Certain Actions After the Closing

9.1 Execution of Further Documents and Further Assistance. From and after the Closing Date, upon the reasonable request of the Purchaser, the Seller shall execute, acknowledge and deliver all such further acts, bills of sale, assignments, transfers, conveyances, powers of attorney and assurances as may be reasonably required to convey and transfer to and vest in the Purchaser and protect its right, title and interest in the Purchased Assets, and as may be appropriate otherwise to carry out the transactions contemplated by this Agreement.

## 10.0 Miscellaneous

10.1 Amendment and Modification. The parties hereto may amend, modify and supplement this Agreement in such manner as may be agreed upon by them in writing signed by both parties.

10.2 Termination.

(a) Anything to the contrary herein notwithstanding, this Agreement may be terminated and the transaction contemplated hereby may be abandoned:

    i. by the mutual written consent of all of the parties hereto at any time prior to the Closing Date;

    ii. by the Purchaser at any time prior to the Closing Date if there shall be a pending or threatened action or proceeding by or before any court or other governmental body which shall seek to restrain, prohibit or invalidate the sale of the Purchased Assets to the Purchaser or any other transaction contemplated hereby including the Sale, or which might affect the right of the Purchaser to own, operate in their entirety or control the Purchased Assets and which,

7

in the judgment of the Purchaser, makes it inadvisable to proceed with the actions contemplated by this Agreement. In the event of a threatened action or proceeding, Seller shall provide notice with all information in its possession. Purchaser may postpone the closing and shall have fifteen (15) business days to terminate this Agreement under this subsection. If Purchaser fails to do so, Purchaser's rights hereunder with respect to the disclosed action shall be deemed waived;

iii.     by either party in the event of the material breach by the other party of any provision of this Agreement, which breach is not remedied by the breaching party within thirty (30) days after receipt of notice thereof from the terminating party.

(b)     The risk of any loss to the Purchased Assets to be sold by the Seller hereunder and all liability with respect to injury and damage occurring in connection therewith shall be the sole responsibility of the Seller until the completion of the Closing and shall be that of the Purchaser thereafter. If any material part of said Purchased Assets shall be damaged by fire or other casualty prior to the Closing Date hereunder, the Purchaser shall have the right and option:

i.     to terminate this Agreement, without liability to any party thereto; or

ii.     to proceed with the Closing hereunder, in which event the Purchaser shall be entitled to receive and retain the insurance proceeds arising from such casualty or to offset the amount of such casualty or loss from the Purchase Price.

10.3    <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns, heirs and legal representatives.

10.4    <u>Entire Agreement</u>. This Agreement and the exhibits and schedules attached hereto contain the entire agreement of the parties hereto with respect to the purchase of the Purchased Assets and the other transactions contemplated herein, and supersede all prior understandings and agreements of the parties with respect to the subject matter hereof. Any reference herein to this Agreement shall be deemed to include the schedules and exhibits attached hereto.

10.5    <u>Risk of Loss; Insurance</u>. Risk of loss to the Purchased Assets shall remain on the Seller at all times.

10.6    <u>Headings</u>. The descriptive headings in this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

8

10.7    Execution In Counterpart. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original.

10.8    Notices. Any notice, request, information or other document to be given hereunder to any of the parties by any other party shall be in writing and delivered personally or sent by certified mail, postage prepaid, as follows:

If to the Seller, addressed to:

**Thoughtwire Media LLC**
1669 Lexington Avenue, Suite B
Mansfield, Ohio 44907

with a copy to :

Anthony J. DeGirolamo Esq.
3930 Fulton Drive NW, Suite 100B
Canton, Ohio 44718
Facsimile No. (330) 305-9713

If to the Purchaser, addressed to:

**Directory Concepts Inc.**
Attn. Mr. Thomas C. Hickox
P.O. Box 8077
Mansfield, Ohio 44907

with a copy to:

Jay Wagner, Esq.
Wagner law Firm Ltd.
P.O. Box 576
Galion, Ohio 44833
Facsimile No. (419) 462-5058

Any party may change the address to which notices hereunder are to be sent to it by giving written notice of such change of address in the manner herein provided for giving notice. Any notice delivered personally shall be deemed to have been given on the date it is so delivered, and any notice delivered by registered or certified mail shall be deemed to have been given on the date it is received.

10.9    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio applicable to contracts made and to be performed therein.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

SELLER

**THOUGHTWIRE MEDIA LLC**

By: _____

Name:  Thomas C. Hickox

Title:  Member

PURCHASER

**DIRECTORY CONCEPTS INC.**

By: _____

Name:  Thomas C. Hickox

Title:  President

10

# SCHEDULE A

## PURCHASED ASSETS

Exhibit B-50: Other Machinery, Fixtures, Equipment

Hosting Server Assets

| | |
|---|---|
| Dell PowerEdge 1950 | $100.00 |
| Dell PowerEdge 1950 | $105.00 |
| Dell PowerEdge 1950 | $100.00 |
| Dell PowerEdge 1950 | $115.00 |
| Dell PowerEdge 1950 | $100.00 |
| Dell PowerEdge 1950 | $95.00 |
| Dell PowerEdge 1950 | $100.00 |
| Dell PowerEdge 1950 | $110.00 |
| Dell PowerEdge 1950 | $95.00 |
| Dell PowerEdge 1950 | $100.00 |
| Dell PowerEdge 1950 | $105.00 |
| Dell PowerEdge 2950 | $275.00 |
| Dell PowerEdge 2950 | $300.00 |
| Dell PowerEdge 2950 | $290.00 |
| Dell PowerEdge 2950 | $225.00 |
| Dell PowerEdge 2950 | $215.00 |
| Dell PowerEdge 2950 | $245.00 |
| Dell PowerEdge 2950 | $295.00 |
| Dell PowerEdge 2950 | $275.00 |
| Dell PowerEdge 2950 | $290.00 |
| Dell PowerEdge 2950 | $215.00 |
| Dell PowerEdge 2950 | $300.00 |
| Dell PowerEdge 2950 | $315.00 |
| Dell PowerEdge 2950 | $300.00 |
| Dell PowerEdge R72 | $5,000.00 |
| Dell PowerEdge R72 | $5,000.00 |
| Dell PowerEdge R72 | $5,000.00 |
| Total | $19,665.00 |

DomainName
1011BLOG.COM
1011CLIENT.COM
1011COMMERCE.COM
1011CONSULTING.COM
1011DESIGN.COM
1011DEV.COM
1011ECOMMERCE.COM
1011MARKETING.COM
1011MOBILE.COM
1011MOBILE.MOBI
1011SOLUTIONS.COM
1011SOLUTIONS.NET
1011TEAM.COM
1011WEB.COM
1011WEB.MOBI
1011WEB.NET
1011WEBCONSULTING.COM
1011WEBDESIGN.COM
1011WEBDEVELOPMENT.COM
1011WEBSOLUTIONS.COM
1011WEBSOLUTIONS.NET
10ELEVENWEB.COM
AIMONLINECONSULTING.COM
ALLYOUCANEATHOSTING.COM
ALLYOUCANEATHOSTING.INFO
ALLYOUCANEATHOSTING.NET
ALLYOUCANEATHOSTING.ORG
MOBILESEARCHPROS.COM
NATDIRECT.COM
NATIONALDIRECTMEDIA.COM
NATIONALDIRECTMEDIA.INFO
NATIONALDIRECTMEDIA.NET
NATIONALDIRECTMEDIASERVICE.BIZ
NATIONALDIRECTMEDIASERVICE.COM
NATIONALDIRECTMEDIASERVICE.NET
NATIONALDIRECTMEDIASERVICE.US
NYPS.COM
NYPSINC.COM
NYPSINC.NET
QRFOLLOWER.COM
SECRIVAL.COM
SEOSOARINGEAGLE.COM

SOARINGSEOEAGLE.COM
TAZSOL.COM
TAZSOL.NET
TEN11WEB.COM
TENELEVENBLOG.COM
TENELEVENCONSULTING.COM
TENELEVENSOLUTIONS.COM
TENELEVENWEB.COM
TENELEVENWEB.MOBI
TENELEVENWEB.NET
TENELEVENWEBCONSULTING.COM
TENELEVENWEBSOLUTIONS.COM
TENELEVENWEBSOLUTIONS.NET
THEBOOKHOSTING.NET
THEBOOKHOSTING.ORG
THELOCALSEARCH.CO
THELOCALSEARCHCOMPANY.BIZ
THELOCALSEARCHCOMPANY.CO
THELOCALSEARCHCOMPANY.INFO
THELOCALSEARCHCOMPANY.MOBI
THELOCALSEARCHCOMPANY.NET
THELOCALSEARCHCOMPANY.ORG
THELOCALSEARCHCOMPANY.US
THOUGHTWM.COM
TRACKYP.COM
YPTRACKING.COM

accountantlogos.com
advanced-media-productions.com
advancedmediaproductions.com
advmediaproductions.com
ampbeta.com
boston-web-design.net
boston-web-site-design.com
boston-website-design.com
crygentech.com
dgsms.biz
dgsms.co
dgsms.net
dgsms.org
elocalcafe.biz
elocalcafe.com
elocalcafe.net
emailexpressdirect.com
emailexpressdirect.net
fliptomobile.com
fusedhosting.net
gohost.com
gohosting.com
gohosting.net
gohosts.com
gohosts.net
gowebhost.com
gowebhost.net
impacthosting.com
insurancelogo.com
lawyerlogodesign.com
lawyerlogos.com
local-seo-pros.biz
local-seo-pros.co
local-seo-pros.com
local-seo-pros.info
local-seo-pros.mobi
local-seo-pros.net
local-seo-pros.org
local-seo-pros.pro
local-seo-pros.us
local-seo-pros.us.com

logomagic.biz
logomagic.co
logomagic.com
logomagic.info
logomagic.mobi
logomagic.net
logomagic.org
logomagic.pro
logomagic.us
logomagic.us.com
medical-logos.com
mortgagelogos.com
newimpacthosting.com
northstormhosting.net
ppc-pros.biz
ppc-pros.co
ppc-pros.net
ppc-pros.org
ppc-pros.pro
ppc-pros.us.com
programmingwiz.com
qualitylogodesign.com
restaurantlogos.com
sdx.net
searchwiz.com
seo-pros.mobi
seo-pros.org
seo-pros.pro
seo-pros.us.com
shoppingcartwiz.com
signaldataexpress.com
signaldataonline.com
signaldataonline.net
social-media-pros.biz
social-media-pros.co
social-media-pros.info
social-media-pros.mobi
social-media-pros.net
social-media-pros.org
social-media-pros.pro
social-media-pros.us

social-media-pros.us.com
spalogos.com
thebookhosting.com
thought-wire.com
thought-wire.net
thoughtwh.com
thoughtwireclient.com
thoughtwiredesign.com
thoughtwiredesign.net
thoughtwirehost.com
thoughtwirehosting.com
thoughtwireinfosoft.com
thoughtwiremarketing.com
thoughtwiremarketing.info
thoughtwiremarketing.net
thoughtwiremobileandwebsites.com
thoughtwiremobileweb.com
twinfosoft.com
vps6.net
web-design-boston.net
webcast1.com
webcast1.net
webcastone.com
webcastone.net
yellowpagesmobile.org
yellowpagesmobile.pro
yellowpagesonline.pro

Phone Numbers DID

### *PORTED NUMBERS*
4132034114
4132034133
4192935216
4192935217
4192935384
4192994090
4192994206
4192994207
4192994208
4192994209
4192994313
4192994315
4192994317
4192994318
4192994690
4193301291
4193301293
4193301294
4193301295
4193301296
4193301297
4193301298
4194190040
4194190041
4194194946
4194195686
4194195687
4194195688
4194658110
4196102076
4196102101
4197560252
4197562708
4197565234
4197565360
4197565487
4197566525
4197567064
4197567381
4197568295
4199894421

```
4199894767
4199894772
4199896639
5012050009
5012298859
5012298951
5012298952
5012298953
5012298954
5012298955
5012320867
5012320868
5019751011
5082444002
5082444147
5082444165
5082444398
5082470094
5086475151
5132972287
5613530775
5613917775
5613922202
5614492577
5618990964
5618990967
5618990968
5618990975
5672410377
5672470474
5672473423
6143851088
6148082167
7036423800
7168004963
7168004964
7168004965
7168004966
7168004967
7747688686
7812144724
8172028764
8172028886
8176459414
9492364902
4198845017
```

4198845031
4198845039
4198845042
4199828113
4199828122
7408489010
7408489015
7408489039
7408489040

## *TOLL-FREE*

8003672570
8003735646
8004546977

8667002016
8669902202
8778489581
8778603726
8778603732
8885794932
8887555151

**WHOIS-RWS**

| Network | |
|---|---|
| Net Range | 208.79.140.0 - 208.79.143.255 |
| CIDR | 208.79.140.0/22 |
| Name | NS-NET1 |
| Handle | NET-208-79-140-0-1 |
| Parent | NET208 (NET-208-0-0-0-0) |
| Net Type | Direct Allocation |
| Origin AS | AS13529 |
| Organization | NetStrategies (SVPLL) |
| Registration Date | 2007-06-20 |
| Last Updated | 2012-03-20 |
| Comments | |
| RESTful Link | https://whois.arin.net/rest/net/NET-208-79-140-0-1 |
| See Also | Related POC records. |
| See Also | Related organization's POC records. |
| See Also | Related delegations. |

# WHOIS-RWS

## Network

| | |
|---|---|
| Net Range | 199.192.144.0 - 199.192.147.255 |
| CIDR | 199.192.144.0/22 |
| Name | NS-NET2 |
| Handle | NET-199-192-144-0-1 |
| Parent | NET199 (NET-199-0-0-0-0) |
| Net Type | Direct Allocation |
| Origin AS | AS40715<br>AS13529 |
| Organization | NetStrategies (SVPLL) |
| Registration Date | 2011-08-23 |
| Last Updated | 2013-09-24 |
| Comments | https://www.gohost.com/ |
| RESTful Link | https://whois.arin.net/rest/net/NET-199-192-144-0-1 |

| Function | Point of Contact |
|---|---|
| NOC | NOCAD27-ARIN (NOCAD27-ARIN) |
| Abuse | ABUSE3932-ARIN (ABUSE3932-ARIN) |
| Tech | RMO209-ARIN (RMO209-ARIN) |

| | |
|---|---|
| See Also | Related organization's POC records. |
| See Also | Related delegations. |

## Organization

| | |
|---|---|
| Name | NetStrategies |
| Handle | SVPLL |
| Street | Thoughtwire Media LLC<br>PO BOX 8077 |
| City | Mansfield |
| State/Province | OH |
| Postal Code | 44907 |
| Country | US |
| Registration Date | 2007-03-01 |
| Last Updated | 2015-06-24 |
| Comments | https://www.gohost.com<br>https://helpdesk.gohost.com |
| RESTful Link | https://whois.arin.net/rest/org/SVPLL |

| Function | Point of Contact |
|----------|------------------|
| Tech | NOCAD27-ARIN (NOCAD27-ARIN) |
| Tech | RMO209-ARIN (RMO209-ARIN) |
| Abuse | ABUSE3932-ARIN (ABUSE3932-ARIN) |
| Tech | COOVE4-ARIN (COOVE4-ARIN) |
| NOC | NOCAD27-ARIN (NOCAD27-ARIN) |
| Admin | RMO209-ARIN (RMO209-ARIN) |

## Point of Contact

| | |
|---|---|
| Note | ARIN has attempted to validate the data for this POC, but has received no response from the POC since 2015-09-24 |
| Name | NOC Admin |
| Handle | NOCAD27-ARIN |
| Company | Thoughtwire Hosting |
| Street | PO BOX 8077 |
| City | Mansfield |
| State/Province | OH |
| Postal Code | 44907 |
| Country | US |
| Registration Date | 2007-03-01 |
| Last Updated | 2014-09-24 |
| Comments | https://www.gohost.com/ |
| Phone | +1-877-848-9581 (Office) |
| | +1-703-642-3800 (Fax) |
| | +1-877-860-3732 (Office) |
| Email | noc.1@thoughtwirehosting.com |
| | sysadmin@gohost.com |
| RESTful Link | https://whois.arin.net/rest/poc/NOCAD27-ARIN |

## Point of Contact

| | |
|---|---|
| Name | Moses , Robert |
| Handle | RMO209-ARIN |
| Company | goHost |
| Street | 301 S. Elm St, Suite 601 |
| City | Greensboro |
| State/Province | NC |
| Postal Code | 27401 |
| Country | US |
| Registration Date | 2009-07-20 |
| Last Updated | 2015-06-05 |

| | |
|---|---|
| Comments | https://www.gohost.com/ |
| Phone | +1-877-848-9581 (Office) |
| | +1-703-642-3800 (Office) |
| Email | rmoses@gohost.com |
| | rmoses@thoughtwm.com |
| RESTful Link | https://whois.arin.net/rest/poc/RMO209-ARIN |

**Point of Contact**

| | |
|---|---|
| Note | ARIN has attempted to validate the data for this POC, but has received no response from the POC since 2014-09-24 |
| Name | Abuse Admin |
| Handle | ABUSE3932-ARIN |
| Company | Thoughtwire Hosting |
| Street | PO BOX 8077 |
| City | Mansfield |
| State/Province | OH |
| Postal Code | 44907 |
| Country | US |
| Registration Date | 2013-09-24 |
| Last Updated | 2013-09-24 |
| Comments | |
| Phone | +1-877-860-3732 (Office) |
| Email | abuse.1@thoughtwirehosting.com |
| RESTful Link | https://whois.arin.net/rest/poc/ABUSE3932-ARIN |

**Point of Contact**

| | |
|---|---|
| Note | ARIN has attempted to validate the data for this POC, but has received no response from the POC since 2015-09-24 |
| Name | Coovert , Nathan |
| Handle | COOVE4-ARIN |
| Company | Thoughtwire Hosting |
| Street | PO BOX 8077 |
| City | Mansfield |
| State/Province | OH |
| Postal Code | 44907 |
| Country | US |
| Registration Date | 2013-09-24 |
| Last Updated | 2014-09-24 |
| Comments | |
| Phone | +1-877-860-3732 (Office) |
| Email | ncoovert@gohost.com |
| | ncoovert@thoughtwm.com |

## SCHEDULE B

## ASSIGNED CONTRACTS & LEASES

1. Contract with Google for advertising.

2. Contract with Bing Ads for advertising.

# **EXHIBIT B**

127221

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION, CANTON**

```
--------------------------------------------------------x
In re:                            :   Case No. 16-60607
                                  :
THOUGHTWIRE MEDIA, LLC[1]         :   Chapter 11
                                  :
                                  :   Judge Russ Kendig
                                  :
          Debtor and              :
          Debtor-in-Possession.   :
                                  :
(Employer Tax I.D. No. 27-3153003)  :
--------------------------------------------------------x
```

**NOTICE OF DEBTOR'S PROPOSED ASSUMPTION AND ASSIGNMENT**
**AND CURE OF DEFAULTS UNDER CERTAIN EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES PURSUANT TO SALE ORDER**

TO ALL PARTIES IN INTEREST:

PLEASE TAKE NOTICE THAT the above captioned debtor and debtor in possession (the "Debtor") has filed its Motion for Order Authorizing the Sale of Substantially All of its Assets, Free and Clear of Liens, Claims, Encumbrances, and Interests and assumption and Assignment of Executory Contracts and Unexpired Leases (the "Sale Motion") pursuant to 11 U.S.C. §§ 363(b) and (f) and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). The Court has granted the Sale Motion and the Debtor has accepted an offer for the sale of its assets and assumption and assignment of executory contracts and unexpired leases.

---

1  The Debtor also used the following business names:  VPS6; Thoughtwire Hosting; Thoughtwire Marketing; Thoughtwire Mobile; and Websites.

PLEASE TAKE FURTHER NOTICE THAT on May __, 2016, the Bankruptcy Court entered the ***Agreed Order Pursuant to 11 U.S.C. §§ 363(b), (f), (m) and 365, and Fed. R. Bankr. P. 6004, 6004, and 9014 (I) Authorizing the Debtor to Sell Substantially All of Its Assets Free and Clear of Liens, Claims, Encumbrances, and Interests and (II) to Assume and Assign Executory Contracts and Unexpired Leases Thereto*** (Docket No. ____) (the "Sale Order") wherein the Bankruptcy Court approved and authorized, among other things, the sale of substantially all of the Debtor's assets to Directory Concepts Inc. (the "Purchaser"). The Sale Order also approved the procedures for the assumption and assignment of contracts and leases (the "Assumption and Assignment Procedures").

PLEASE TAKE FURTHER NOTICE THAT pursuant to the Assumption and Assignment Procedures, objections to the proposed Cure Amount, adequate assurance of future performance of obligations to be provided to contract counterparties, and any other objections to the assumption and assignment of the Contract or Lease must: (i) be in writing; (ii) set forth the nature of the objector's claims against or interests in the Debtors' estates (if different than reflected in the Cure Notice); (iii) the basis for the objection; (iv) comply with all applicable Bankruptcy Rules and orders of the Bankruptcy Court; and (v) be filed with the Bankruptcy Court and served upon the following (a) Anthony J. DeGirolamo, 3930 Fulton Ave N.W., Ste. 100B, Canton, Ohio 44718; (b) United States Department of Justice, Office of the United States Trustee for the District of Delaware, 201 Superior Avenue E, Suite 441, Cleveland, Ohio 44114 (Attn: Tiiara N. A. Patton); and (c) Wagner Law Firm, Attn: Jay Wagner Esq., P.O. Box 576, Galion, Ohio 44833. Objections to the proposed Cure Amount, the adequate assurance of future performance by the Purchaser, and any other objections to the assumption and assignment of the contract of lease must be filed and served by no later than 4:00 p.m. (EST) on **June 6, 2016** (the "Assumption and Assignment Objection Deadline").

## Executory Contracts & Unexpired Leases to be Assumed

In connection with the sale to the Purchaser, the Debtor are seeking to to assume and assign the executory contracts and unexpired leases (the "Contracts") set forth below as part of the relief granted by the Court. In addition, the amounts, if any, necessary to be paid to cure and compensate for any existing defaults, whether arising prepetition or postpetition, in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code, under each of the Contracts are likewise set forth below:

1. Contract with Google for advertising—no cure amount due.

2. Contract with Bing Ads for advertising-no cure amount due.

## Cure of Defaults under the Contracts

Pursuant to sections 365(b) the Bankruptcy Code, and subject to any orders entered by this Court with regard to sale procedures, the Debtor hereby gives notice that all defaults under the Contracts will be cured by the purchaser of the Debtor's assets: Directory Concepts, Inc. no later than June 15, 2016. The Debtor is aware of no defaults under the above-listed contracts.

127140

**Consequences of Failing to Timing File and Serve and Objection**

        **PLEASE TAKE FURTHER NOTICE THAT** if a timely objection is received as set forth herein and such objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such objection at such date and time as may be set by the Bankruptcy Court. If no objection is filed and served in the manner described above, the Debtor may assume and assign the Contracts without further notice or hearing.

**Obtaining Additional Information**

        **PLEASE TAKE FURTHER NOTICE THAT** copies of the Sale Order, adequate assurance of future performance from the Purchaser and any other related documents are available upon request to the Debtor's counsel, Anthony J. DeGirolamo, 3930 Fulton Dr. N.W., Ste. 100B, Canton, Ohio 44718, Telephone: 330-305-9700; E-mail: ajdlaw@sbcglobal.net.

Dated: May 5, 2016

                                                Respectfully submitted,

                                                /s/ Anthony J. DeGirolamo
                                                Anthony J. DeGirolamo (0059265)
                                                3930 Fulton Dr., N.W., Ste. 100B
                                                  Canton, Ohio 44702
                                                Telephone: (330) 305-9700
                                                  Facsimile: (330) 305-9713
                                                  E-mail: ajdlaw@sbcglobal.net

                                                COUNSEL FOR DEBTOR AND
                                                DEBTOR IN POSSESSION

3

127140